**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lashawn Lowell BANKS,**
**Defendant–Appellant.**

**No. 00–10439.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 2001

Filed March 5, 2002.

Randall J. Roske, Las Vegas, NV, for the defendant-appellant.

J. Walter Green and Karyn Kenny, USLV–Office of the U.S. Attorney, Las Vegas, NV, for the plaintiff-appellee.

Before: POLITZ,* W. FLETCHER, and FISHER, Circuit Judges.

Opinion by Judge POLITZ; Partial Concurrence and Partial Dissent by Judge FISHER.

POLITZ, Circuit Judge.

Lashawn Lowell Banks appeals his guilty plea conviction for possession of a controlled substance with intent to distribute, and for being a drug user in possession of a firearm. His plea followed the district court's denial of his motion to suppress certain evidence. Banks reserved his right to appeal. A close review of the record, counsel's arguments, and guiding principles, persuades us that a reversal and remand is in order.

## BACKGROUND

The present action concerns the execution of a search warrant on Banks' apartment by North Las Vegas Police Department officers and FBI agents. The officers positioned themselves at the front and rear of the apartment and followed the statutory "knock and announce" procedure by knocking loudly on the apartment door and announcing "police search warrant." *See* 18 U.S.C. § 3109. After fifteen to twenty seconds without a response, armed SWAT officers made a forced entry into Banks' apartment.

Once inside, the officers found Banks in the hallway outside his bathroom. Banks, who obviously had just emerged from his shower, was forced to the floor and handcuffed. He then was seated at his kitchen table for questioning and shortly thereafter was provided underwear with which to cover himself. Two agents questioned Banks while other officers searched his apartment. Banks maintains that he was under the influence of drugs and alcohol during the interrogation. Both agents, however, testified that they perceived no indications that Banks was under the influence. Banks also asserts that he was nervous and intimidated by a "good-cop versus bad-cop" routine utilized by the interrogating agents and the hooded SWAT officers searching the apartment. The interrogating agents maintain that Banks appeared calm and was able to reason throughout the interview.

The agents questioned Banks for approximately forty-five minutes, and about midway thereof asked Banks to reveal his suppliers. Banks stated that he would not reveal his suppliers before talking to an attorney. The agents continued the questioning.

---

* Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

Prior to trial Banks moved to suppress the statements he made during the interrogation. He contends that the statements should have been suppressed on the grounds that they were obtained: (a) in violation of 18 U.S.C. § 3109 because the officers failed to wait a reasonable period of time before forcefully entering his residence when executing the search warrant; (b) in violation of the fifth amendment because he did not make a knowing and voluntary waiver of his rights during the interrogation; and (c) in violation of the fifth amendment because the interrogation continued after he made an unequivocal request for an attorney. The district court denied the suppression motion. Following this denial, Banks pled guilty to possession of a controlled substance with intent to distribute and to being a drug user in possession of a firearm.

Banks expressly reserved his right to appeal the court's denial of his Motion to Suppress. This appeal followed.

## ANALYSIS

### I. 18 U.S.C. § 3109

We review a trial court's legal conclusions *de novo*, reviewing findings of fact underlying those conclusions for clear error.[1]

Title 18 U.S.C. § 3109, commonly referred to as the "knock and announce" statute, establishes guidelines for federal law enforcement officers when executing a search warrant. The statute directs that:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to

liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109.

Under the facts at bar this statute raises two critical issues: (a) whether the officers provided notice of their authority and purpose; and (b) whether they were refused admittance. There is no dispute that proper notice of authority and purpose was given herein. Before us is the second issue, *refusal of admittance.*

Banks contends that the officers executing the search war rant entered his apartment illegally because they failed to wait a reasonable time, after receiving no response, before forcefully entering his quarters. Banks further contends that because the entry was in violation of his fourth amendment rights and 18 U.S.C. § 3109, all evidence, including his statements, constitute fruits of an illegal search and should be suppressed. We find this contention persuasive.

A literal application of the statute would allow entry only after both announcement and specific denial of admittance. Our precedents, however, dictate that an affirmative refusal of entry is not required by the statute, and that refusal may be implied in some instances. *See, e.g., United States v. Allende,* 486 F.2d 1351, 1353 (9th Cir.1973). "A failure to answer a knock and announcement has long been equated with a refusal to admit the search party and a justification for forcible entry." *United States v. Ramos,* 923 F.2d 1346, 1356 (9th Cir.1991) overruled on other grounds by *United States v. Ruiz,* 257 F.3d 1030 (9th Cir.2001) (citations omitted). Furthermore, "[t]here are no set rules as to the time an officer must wait before using force to enter a house;

---

1. *United States v. Granville,* 222 F.3d 1214, 1217 (9th Cir.2000) (noting that legal conclusion that "knock and announce" statute was violated is reviewed *de novo*, while findings regarding facts underlying the conclusion are reviewed for clear error).

the answer will depend on the circumstances of each case."[2]

■ Section 3109 serves the following interests: (a) reducing the risk of harm to both the officer and the occupants of the house to be entered; (b) helping to prevent the unnecessary destruction of private property; and (c) symbolizing respect for individual privacy summarized in the adage that "a man's house is his castle." *United States v. Bustamante–Gamez,* 488 F.2d 4, 9 (9th Cir.1973) (quoting *Miller v. United States,* 357 U.S. 301, 307, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958)).

■ Entries may be classified into four basic categories, consistent with the interests served by 18 U.S.C. § 3109:(1) entries in which exigent circumstances exist and non-forcible entry is possible, permitting entry to be made simultaneously with or shortly after announcement; (2) entries in which exigent circumstances exist and forced entry by destruction of property is required, necessitating more specific inferences of exigency; (3) entries in which no exigent circumstances exist and non-forcible entry is possible, requiring an explicit refusal of admittance or a lapse of a significant amount of time; and (4) entries in which no exigent circumstances exist and forced entry by destruction of property is required, mandating an explicit refusal of admittance or a lapse of an even more substantial amount of time. *Id.* at 12. The action at bar falls into the final category because no exigent circumstances existed[3] and the entry required destruction of property—i.e., the door to Banks' apartment.

Consideration of the foregoing categories aids in the resolution of the essential question whether the entry made herein was reasonable under the circumstances. In addressing that inquiry, we categorize entries as either forced or non-forced. The reasonableness must then be determined in light of the totality of the circumstances surrounding the execution of the warrant, particularly considering the duration of the officers' pause before making a forced entry after the required knock and announcement.

■■ Our task is to determine what constitutes a reasonable waiting period before officers may infer that they have been denied admittance. In assessing the reasonableness of the duration of the officers' wait, we review all factors that an officer reasonably should consider in making the decision to enter without an affirmative denial. Those factors include, but are not limited to: (a) size of the residence; (b) location of the residence; (c) location of the officers in relation to the main living or sleeping areas of the residence; (d) time of day; (e) nature of the suspected offense; (f) evidence demonstrating the suspect's guilt; (g) suspect's prior convictions and, if any, the type of offense for which he was convicted; and (h) any other observations triggering the senses of the officers that reasonably would lead one to believe that immediate entry was necessary.

■ In the case before us, the officers knocked once and announced their purpose. The officers heard no sound coming from the small apartment that suggested

---

**2.** *McClure v. United States,* 332 F.2d 19, 22 (9th Cir.1964), *cert. denied,* 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1965).

**3.** This court reviews the mixed question of law and fact as to whether exigent circumstances exist *de novo. United States v. McConney,* 728 F.2d 1195, 1204–05 (9th Cir.

1984) (en banc). Exigent circumstances exist when "there [is] a likelihood that the occupants [will] attempt to escape, resist, destroy evidence, or harm someone within. . . ." *Id.* at 1205. No such evidence was presented in this case.

that an occupant was moving away from the door, or doing anything else that would suggest a refusal of admittance. We know from the record that sounds were transmitted relatively easily, for Officer Tomasso, waiting outside at the rear of the apartment, heard Officer Crespo's knock at the front door. Yet none of the officers testified that they heard any sound coming from within the apartment. There was nothing else that triggered the officers' senses, and there were no exigent circumstances warranting a waiver of the reasonable delay. The officers had no specific knowledge of any facts or reasonable expectations from which they could reasonably have believed that entry into Banks' residence would pose any risk greater than the ordinary danger of executing a search warrant on a private residence.

Because the officers were not affirmatively granted or denied permission, they were required to delay acting for a sufficient period of time before they could reasonably conclude that they impliedly had been denied admittance. After pausing a maximum of fifteen to twenty seconds, the officers forced entry. Banks came out of his shower upon hearing the sound of his door being forced open, and stumbled into the hallway concerned that his apartment was being invaded. Upon entering, the officers found Banks naked, wet, and soapy from his shower. Under these circumstances, we are not prepared to conclude that the delay of fifteen to twenty seconds after a single knock and announcement before forced entry was, without an affirmative denial of admission or other exigent circumstances, sufficient in duration to satisfy the constitutional safeguards.

4. U.S. Const., amend. V.

## II. Banks' Fifth and Sixth Amendment Claims

As noted above, we review a trial court's legal conclusions *de novo*, and our review of findings of fact underlying those conclusions is for clear error. However, "[w]e review the district court's determination that the defendant knowingly and voluntarily waived his *Miranda* rights under the clearly erroneous standard." *United States v. Fouche*, 833 F.2d 1284, 1286 (9th Cir.1987).

### 1. *The Voluntariness of Banks' Statements*

■ The fifth amendment states that no person "shall be compelled in any criminal case to be a witness against himself." [4] Under the teachings of *Miranda v. Arizona*,[5] to assure the meaningful protection of this fifth amendment right, a defendant subject to custodial interrogation must be advised of his "right to remain silent, that any statement he does make may be used . . . against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* at 444, 86 S.Ct. 1602. A knowing and voluntary waiver of these rights is permissible. Such a waiver, however, must be established by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168–69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

Banks contends that his statements were obtained involuntarily and through coercion in violation of his fifth amendment rights. He complains that because he was under the influence of alcohol and narcotics at the time of the interrogation, he was unable to make a knowing and voluntary waiver of his rights. He further asserts that his statements were coerced because he was terrorized by the entry of the

5. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

police into his home, intimidated by officers employing the "good-cop versus bad-cop" routine, and in fear of being paraded naked around the neighborhood. Our review of the record, however, persuades us that the district court did not err in its determination that he made a knowing and voluntary waiver of these rights.

A confession made in a drug or alcohol induced state, or one that is the product of physical or psychological pressure, may be deemed voluntary if it remains "the product of a rational intellect and a free will...." *Medeiros v. Shimoda,* 889 F.2d 819, 823 (9th Cir.1989) (citations omitted). The interrogating agents testified about Banks' demeanor during the interrogation. Neither detected any indication that Banks was under the claimed adverse influence, and both described him as calm and able to reason. Similarly, the record demonstrates that Banks was able to understand the circumstances, follow instructions, and answer questions. From the record, Banks does not appear to have been "incapacitated" by his use of drugs and alcohol. During the interrogation, he answered some of the agent's questions while refusing to answer those regarding his suppliers and was able to provide officers with the combination to his safe. Prior to being taken to the police station, he requested that his girlfriend be contacted so she could secure his apartment. Because the evidence supports the district court's conclusion that Banks' statements were the product of rational intellect and a free will, we hold that the district court did not err in finding a knowing and voluntary waiver.

### 2. Banks' Right to Counsel Under Miranda

Banks also contends that his statements were obtained in violation of his right to counsel under *Miranda.* No further questioning of a suspect may occur after he expresses the desire to consult with counsel, and police must clarify an ambiguous or equivocal request for an attorney. *Miranda,* 384 U.S. at 474, 86 S.Ct. 1602; *see also United States v. Fouche,* 833 F.2d 1284, 1287 (9th Cir.1985), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988). Notwithstanding, "a defendant may selectively waive his *Miranda* rights, deciding to respond to some questions but not others." *Bruni v. Lewis,* 847 F.2d 561, 563 (9th Cir.1988) (citations omitted).

In support of his claim that his right to counsel under *Miranda* was violated, Banks asserts that during the latter part of his questioning he told the agents that he wanted to consult with a lawyer about the possibility of making a "deal" in exchange for divulging information about his suppliers. The record reflects that when the agents asked Banks a question regarding his suppliers, he responded that he wanted to speak to an attorney before revealing his suppliers to see if he could secure some consideration, what one might deem a *quid pro quo,* for his cooperation with the officers. The agents reasonably understood Banks' statement to mean he was willing to answer some questions but not others. That conclusion is fully supported by the record.[6]

The judgment is AFFIRMED in part, REVERSED in part and the matter is REMANDED for further proceedings consistent herewith.

---

**6.** *Fouche,* 833 F.2d at 1287("[I]f [a suspect] is indecisive in his request for counsel, there may be some question on whether he did or did not waive counsel ... Situations of this kind must necessarily be left to the judgment of the interviewing Agent.") (quoting *Miranda,* 384 U.S. at 436, 86 S.Ct. 1602).

FISHER, Circuit Judge, dissenting in part, concurring in part.

The majority rules the entry in this case unconstitutional and in violation of § 3109 because the officers delayed only 15 to 20 seconds after knocking loudly on Banks' apartment door and announcing "police search warrant." Simply put, the police should have waited longer—how much longer is not specified—before they could lawfully assume that their knock and announcement had been heard, that Banks was not going to open the door voluntarily and that they were justified in forcing the door open with a battering ram. Op. at 704. I share my colleagues' concerns that officers not peremptorily and forcibly invade the privacy of a suspect's home, and it is disquieting to visualize Banks' shock and embarrassment as he emerged naked and still soapy from his shower and confronted the officers who had just burst through his front door. *Cf. United States v. Becker*, 23 F.3d 1537, 1540 (9th Cir.1994) ("The sanctity of a person's home, perhaps our last real retreat in this technological age, lies at the very core of the rights which animate the [fourth] amendment."). Nonetheless, although this case admittedly is a close call, I cannot agree that the officers here acted outside the limits of established case law or—more to the point—even the criteria the majority articulates. I therefore respectfully dissent from the § 3109 portion of the majority opinion (Part I). Otherwise, I concur in Part II of the opinion.

I do not think the outcome of this case can turn simply on the amount of time the officers waited after knocking. Banks did not hear the knock or announcement in the first place; thus it would have made no practical difference if the officers waited substantially longer than 15 or 20 seconds. If there was a problem of procedural or constitutional dimension, it had to be that

the officers did not knock twice or engage in some other effort to determine whether Banks was home and had heard the first knock. Although hinting that was the real problem here, the majority nevertheless holds that the officers:

> were *required to delay acting* for a sufficient period of time before they could reasonably conclude that they impliedly had been denied admittance....

> Under these circumstances, we are not prepared to conclude that the *delay* of fifteen to twenty seconds after a single knock and announcement before forced entry was, without an affirmative denial of admission or other exigent circumstances, *sufficient in duration* to satisfy the constitutional safeguards.

Op. at 704–05 (emphasis added).

In assessing whether there was a reasonable delay, the majority acknowledges that "[t]here are no set rules as to the time an officer must wait before using force to enter a house; the answer will depend on the circumstances of each case." *McClure v. United States*, 332 F.2d 19, 22 (9th Cir.1964); *see also United States v. Bustamante-Gamez*, 488 F.2d 4, 9(9th Cir.1973) ("In short, 'a claim under 18 U.S.C. § 3109 depends upon the particular circumstances surrounding the [entry].'") (quoting *Jones v. United States*, 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).

Nonetheless, the majority then extrapolates from *Bustamante-Gamez* four basic categories of entry, placing this case in category 4: "entries in which no exigent circumstances exist and forced entry by destruction of property is required, mandating an explicit refusal of admittance or a lapse of an even more substantial amount of time"—that is, substantially more than the "significant amount of time"

required under category 3.[1] Refining its analysis further, the majority sets forth a nonexclusive list of factors "an officer reasonably should consider in making the decision to enter [forcibly] without an affirmative denial." *See* Op. at 704. The source of this list is not identified, but I have no quarrel with its substance—so long as it is not read as substituting a checklist approach to what our case law recognizes is a circumstance-specific evaluation.

Where I do disagree with the majority, however, is its application of these factors—or more to the point, its disregard or discounting of key factors present here. Among the listed factors are "(a) size of the residence"; "(c) location of the officers in relation to the main living or sleeping areas of the residence"; and "(e) nature of the suspected offense." Banks lived in a small, two-bedroom, one-bathroom apartment. The bathroom was located in the middle part of the apartment. Banks testified that, "It's not a very big apartment." And, "2 steps from the shower is—you can look left, see the door." Arriving at Banks' apartment at about 2:00 p.m., the officers positioned themselves at the front and back doors. There is no dispute that the officers gave proper notice of their authority and purpose. Officer Crespo knocked loudly on the front door and announced "police search warrant." Officer Tomasso, at the rear, testified he heard Crespo's loud knock. (The record is silent as to Tomasso's also having heard the announcement, or whether anyone heard water running or other sounds of someone taking a shower.) On these facts, the officers could reasonably have assumed Banks had heard at least the loud knock and probably the announcement.

Moreover, Banks' suspected offense was drug dealing; the warrant to search his apartment was predicated upon information, corroborated by a controlled buy, that Banks was selling cocaine at his apartment. Thus there was some basis for concern that Banks' delay in responding might be related to attempts to dispose of evidence. *See United States v. Spikes,* 158 F.3d 913, 926 (6th Cir.1998), where the court noted that "where drug traffickers may easily and quickly destroy the evidence of their illegal enterprise by simply flushing it down the drain, 15 to 20 seconds is certainly long enough for officers to wait before assuming the worst and making a forced entry." *Spikes* also cautioned that "[t]his reality, however, must be balanced against the fact that the simple presence of drugs alone does not justify abandoning the 'knock and announce' rule or so diluting its requirements that it becomes a meaningless gesture.... Thus the presence of drugs in the place to be searched, while not a conclusive factor, lessens the length of time law enforcement must ordinarily wait outside before entering a residence." *Id.* (citation omitted). *See also United States v. Jones,* 133 F.3d 358, 361–62 (5th Cir.1998) (reviewing cases, and upholding wait of 15 to 20 seconds after knock "given the possibility that a longer wait might well have resulted in the destruction of evidence[illegal drugs]"); *United States v. Garcia,* 983 F.2d 1160,

---

1. I say "extrapolate" because *Bustamante–Gamez* did not explicitly identify four categories, only three—albeit not as "categories." *Bustamante–Gamez* stated: "an explicit refusal of admittance or lapse of a significant amount of time is necessary if the officers have no facts indicating exigency." 488 F.2d at 9. The majority subdivides this into separate categories, depending on whether "nonforcible entry is possible" (category 3—requiring "a lapse of a *significant* amount of time") or "forced entry by destruction of property is required" (category 4—requiring "a lapse of *an even more substantial* amount of time"). Op. at 704 (emphasis added).

1168 (1st Cir.1993) (holding wait of 10 seconds after knock reasonable where occupants of apartment were believed to possess cocaine, "a substance that is easily and quickly hidden or destroyed"). *But cf. Becker,* 23 F.3d at 1541 ("[W]hile peril to officers or the possibility of destruction of evidence or escape may well demonstrate an exigency [justifying immediate entry], mere unspecific fears about those possibilities will not."); *United States v. Moreno,* 701 F.2d 815, 818 (9th Cir.1983), *vacated on other grounds by* 469 U.S. 913, 105 S.Ct. 286, 83 L.Ed.2d 223 (1984) ("In order to justify forced entry without an announcement of authority and refusal of admittance, there must be some evidence to support the suspicion that contraband will be destroyed."); *United States v. Fluker,* 543 F.2d 709, 717 (9th Cir.1976) (no evidence the defendants were destroying narcotics to justify officers entering without any knock or announcement).

The majority acknowledges some of these factors in passing, but gives them little or no weight. With respect, I fail to see what guidance law enforcement should draw from such a holding that disregards some of the very factors the majority identifies as relevant. Nor do I think the majority's conclusion is warranted under these circumstances, or in light of decisions involving comparable situations where a 15 to 20 second delay has been held sufficient.

First, 15 to 20 seconds is not an insignificant amount of time to wait after a loud knock and announcement. Knock, then count out the time to see for yourself.

Second, Banks was in the shower and did not hear the knock and announcement, so even if the wait had been longer, absent another knock or announcement, he still would not have responded.

Third, although there is no Ninth Circuit precedent directly on point, our case law—albeit cautionary—and that of other circuits tends to support the entry here. We previously have held that a five second wait after three loud knocks and an announcement was not a reasonably significant amount of time to permit the defendant to determine who was at the door and to respond to the request for admittance, where the warrant was executed early in the morning and the occupants of the apartment were likely to be asleep. *United States v. Granville,* 222 F.3d 1214, 1218–19 (9th Cir.2000). Here, however, the warrant was executed in the middle of the afternoon and there was ample time for Banks to respond to the request for admittance. The Sixth Circuit has held that "when officers execute a warrant in the middle of the day ... the length of time the officers must tarry outside diminishes." *Spikes,* 158 F.3d at 927. Furthermore, given the small size of Banks' apartment, there was no reason for the officers to assume Banks had not had sufficient time to hear and respond to the knock and announcement in the 15 to 20 second interval. The Eighth Circuit specifically addressed such a circumstance in *United States v. Lucht,* 18 F.3d 541 (8th Cir.1994). There, the court concluded a 20 second wait after a knock and announcement was reasonable where the defendants' houses were small, the defendants were awake at the time and there was probable cause to believe they possessed narcotics. *Id.* at 549. "In these circumstances, the possibility was slight that those within did not hear or could not have responded promptly, if in fact they had desired to do so." *Id.* The Tenth Circuit has upheld an entry after a 10 to 12 second wait. *United States v. Knapp,* 1 F.3d 1026 (10th Cir. 1993). Because the defendant, whose presence was assumed given the illuminated lights in the house, gave no indication he intended to allow the officers into his

home voluntarily, the court held, "[i]t was plausible for the officers to conclude that they were affirmatively refused entry after a ten to twelve second interval without a verbal or physical response." *Id.* at 1031.

In a case quite similar to this, the District of Columbia Circuit held that a 15 to 20 second wait after a single knock and announcement was sufficient, and that a second knock was not required. *United States v. Spriggs*, 996 F.2d 320 (D.C.Cir. 1993).

> Clearly the agents did not act unreasonably in entering the apartment after knocking and announcing themselves only a single time.... One need seek admittance only once in order to be refused.... With respect to the delay before entering, under our case law the agents were justified in concluding that they had been constructively refused admittance when the occupants failed to respond within 15 seconds of their announcement.

*Id.* at 322–23. On the other hand, in *United States v. Phelps*, 490 F.2d 644, 646 (9th Cir.1974), in upholding a forced entry, we gave weight to the fact that agents had knocked and announced twice, waiting 5 to 10 seconds after each before forcing entry. But, noting the circumstance-specific nature of the inquiry, *Phelps* emphasized that "it matters not that the record reveals ten, fifteen, or twenty seconds, for the true rule rejects time alone, even 'an exceedingly short time,' such as ten seconds, as the decisive factor." *Id.* at 647(citing *Jackson v. United States*, 354 F.2d 980 (1st Cir. 1965)); *see also United States v. Ramos*, 923 F.2d 1346, 1355–56 (9th Cir.1991), *overruled on other grounds by United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001) (en banc) (upholding entry after two knocks and announcements followed by 45 second delay). Thus, I do not read *Phelps* as *requiring* a second knock here, al-

though—given the circumstances—that might have been a more effective way to assure that Banks heard the demand for entry and had an opportunity to respond.

I do not know what the majority makes of *Phelps* or *Spriggs*, because they are not discussed. Indeed, the majority neglects most of the authority I discuss above. Such authority at the very least provides guidance for determining the reasonableness of the 15 to 20 second wait considering the specific circumstances of Banks' situation—he resided in a small apartment, there was a loud knock and announcement, he was suspected of possessing illegal narcotics and the warrant was executed in the middle of the day. On these facts, I believe it was not unreasonable for the officers to conclude that Banks had heard and constructively denied their request for entry. Accordingly, I respectfully dissent from Part I of the majority opinion.