No. 02-021

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 26

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

JUSTIN MICHAEL HOFFMAN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-01-35,
Honorable Mark L. Guenther, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

            R. Stan Peeler, Peeler Law Office, Bozeman, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

            Marty Lambert, County Attorney, Bozeman, Montana

Submitted on Briefs:  May 30, 2002

Decided:  February 19, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Justin Hoffman appeals from his conviction of aggravated assault in the Eighteenth Judicial District Court, Gallatin County. We affirm.

¶2      The following issues are raised on appeal:

¶3      (1) Whether the District Court erred when it denied Hoffman's Motion to Suppress Defendant's Statement;

¶4      (2) Whether the District Court erred when it denied the admission of opinion testimony regarding Hoffman's knowledge or purpose at the time of the charged offense;

¶5      (3) Whether the District Court erred when it denied Hoffman's request for a lesser included offense instruction regarding the offenses of criminal endangerment, negligent endangerment, and partner and family member assault; and

¶6      (4) Whether, in moving for a new trial, Hoffman may impeach the verdict with a juror affidavit.

## FACTUAL AND PROCEDURAL BACKGROUND

¶7      On February 14, 2000, Logan Hoffman, the two and a half month old son of Justin and Crystal Hoffman, was admitted to the emergency room at Bozeman Deaconess Hospital. The baby was unresponsive, pale, and breathing irregularly. Doctors concluded that Logan had suffered a fractured skull and was bleeding inside his head and behind his retina. A CAT scan of the baby's intracranial contents revealed at least one area of bleeding in his skull, causing swelling in his brain–an injury often associated with accidental or non-accidental trauma. Logan was transferred to the Primary Children's Care Facility in Salt Lake City,

Utah, where his condition eventually stabilized. Doctors further examined Logan's injuries, discovering that the blood in his skull was of two different ages, indicating that he had been injured on more than one occasion. This condition, in addition to secondary symptoms, such as hemorrhaging in Logan's right eye, led doctors to surmise that he was the victim of shaken impact baby syndrome.

¶8 Justin and Crystal were unable to provide a satisfactory explanation of the source of the injuries. They indicated that the hemorrhaging might have occurred when Logan was rocking in his swing, or when his head would knock against their chests as they picked him up. However, these suggestions were discounted in favor of the more plausible theory that Logan had been violently shaken by Justin or Crystal.

¶9 Thus, treating the situation as a possible child abuse case, Bozeman police began investigating. On February 15, 2001, Detective Mark Johnson interviewed Justin Hoffman, at which time, Hoffman also consented to a search of his apartment. There, police observed two holes in a sheetrock wall, positioned in such a way as to suggest that Hoffman had punched the holes with his fist. During the interview with Detective Johnson, Hoffman admitted to shaking his son on two occasions between February 3 and February 14, 2001. After receiving a Miranda warning and waiving his rights, Hoffman explained in detail how he had shaken Logan from side to side, causing the baby's head to flop back and forth. Hoffman explained to Detective Johnson that the first shaking incident occurred several weeks earlier and that Logan soon became irascible, vomiting uncontrollably. Hoffman admitted that he had shaken Logan out of aggravation.

3

¶10 Following the February 15 interview, Hoffman was taken into custody. The following day he requested to speak again with Detective Johnson, at which time he attempted to retract his confession of the previous day. Hoffman discounted the theory offered by doctors that Logan's injuries resulted from abuse, but he was unable to explain the severity of Logan's injuries, or why the baby became unconscious on February 14.

¶11 Hoffman was charged by information with aggravated assault, in violation of § 46-5-202, MCA, and was tried in Bozeman. Before the trial, Hoffman moved to suppress the statements he had made to Detective Johnson. The District Court considered Hoffman's request and the State's response, and concluded that Hoffman knowingly and voluntarily waived his Miranda rights, and that the statements following the waiver were made voluntarily.

¶12 Subsequently, the State moved to exclude psychiatric evidence regarding Hoffman's mental state at the time he committed the charged offense. A month before the trial, Dr. Rich evaluated Hoffman at the request of Hoffman's attorney. Dr. Rich concluded, in his report of the evaluation, that Hoffman had suffered emotional inadequacies, and was of low, average intelligence. He also indicated that Hoffman had experienced an unconscious impulse when he shook Logan, and that he could not have developed the requisite mental state to support an aggravated assault charge. The defense was prepared to offer this testimony to counter the State's evidence that Hoffman acted with the requisite mental state. The District Court ruled on the State's motion, concluding that although Dr. Rich could testify about Hoffman's

4

general psychological condition, he would not be permitted to testify about Hoffman's "knowledge" or "purpose," as the requisite mental states associated with aggravated assault.

¶13 During the settling of jury instructions, Hoffman proposed lesser included offense instructions on criminal endangerment, negligent endangerment, and partner and family member assault. The State objected to the instructions, and the court invited Hoffman to state his reasons for the request. In support of the instructions, Hoffman cited § 46-1-202(8)(a), MCA, and § 46-1-202(8)(c), MCA, as two separate definitions of an included offense. However, he proceeded to argue under only subsection (c), which states that an included offense is an offense that "[d]iffers from the offense charged only in respect that a less serious injury or risk to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." The District Court concluded that criminal endangerment, negligent endangerment, and partner and family member assault are not lesser included offenses of aggravated assault under subsection (c), and denied Hoffman's proposed instructions.

¶14 Hoffman was convicted by a jury of aggravated assault, and was sentenced to twenty years imprisonment. Ten years of the sentence were suspended with conditions. Hoffman moved for a new trial following sentencing. The District Court denied the motion even though it had received a letter from a member of the jury, indicating that the jury would have convicted Hoffman of a lesser included offense if the court had provided a lesser included offense instruction. Hoffman now appeals his conviction.

## DISCUSSION

## Issue One

¶15 We first address the issue of whether the District Court erred when it denied Hoffman's Motion to Suppress Defendant's Statement. Hoffman argues that his first statement to Detective Johnson was involuntary and, therefore, suppressible. He adds that any references to this statement in the second and third statements should also be suppressed. Hoffman contends that his first interview occurred while he was suffering from the effects of limited sleep and a recent marijuana-induced stupor, and that Detective Johnson took advantage of Hoffman's condition and forced the confession, which now stands as the subject of this appeal. Hoffman cites the transcript of the February 15 interview for examples of what he now characterizes as a sort of psychological coercion by the detective. In response, the State notes that Hoffman was advised of, and waived, his Miranda rights. The State also relies on the testimony of its expert witness that Hoffman's cognitive functioning was not dramatically impaired by marijuana or his lack of sleep. The State concludes that based on a review of the totality of the circumstances, the District Court appropriately determined that Hoffman's confession was voluntary.

¶16 A defendant may move to suppress an admission or confession on grounds that it was given involuntarily. *See* § 46-13-301(1), MCA. At trial, the prosecution must prove by a preponderance of the evidence that the confession or admission was voluntary. *See* § 46-13-301(2), MCA. On appeal, we review a trial court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous, and whether those

6

findings were correctly applied as a matter of law. *State v. Hayworth*, 1998 MT 158, ¶ 20, 289 Mont. 433, ¶ 20, 964 P.2d 1, ¶ 20.

¶17    A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if this Court has a definite or firm conviction that the trial court committed a mistake. *State v. Loh* (1996), 275 Mont. 460, 475, 914 P.2d 592, 601; *State v. Hermes* (1995), 273 Mont. 446, 449, 904 P.2d 587, 589; *State v. Bower* (1992), 254 Mont. 1, 7, 833 P.2d 1106, 1110. Substantial evidence requires "more than a mere scintilla of evidence, but may be less than a preponderance of the evidence." *Gypsy Highview Gathering System, Inc. v. Stokes* (1986), 221 Mont. 11, 15, 716 P.2d 620, 623. Where a determination of voluntariness depends upon the credibility of witnesses, this Court must defer to the trial court which is in a superior position to judge the credibility of those witnesses. *State v. Beach* (1985), 217 Mont. 132, 151-52, 705 P.2d 94, 106.

¶18    Use of an involuntary confession against a criminal defendant violates the guarantee against self-incrimination as well as the right to due process of law. *State v. Davison* (1980), 188 Mont. 432, 437, 614 P.2d 489, 492 (*overruled on other grounds by State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15). In determining the voluntariness of a confession, the emphasis is on whether the confession was the product of free choice or compulsion. *Davison*, 188 Mont. at 437, 614 P.2d at 492. This inquiry is a factual question which must take into account the totality of the circumstances. *Loh*, 275 Mont. at 475, 914 P.2d at 601.

7

¶19 When considering the totality of the circumstances, courts have consistently focused on a number of particularly relevant factors. These include the defendant's age and level of education, whether the defendant was advised of his or her Miranda rights, the defendant's prior experience with the criminal justice system and police interrogation, the defendant's background and experience, the defendant's demeanor, coherence, articulateness, and capacity to make full use of his or her faculties, and the length and method of an interrogation. *Loh*, 275 Mont. at 475-76, 914 P.2d at 601-02. In addition, a confession or admission extracted by any sort of threat or violence, by the exertion of any improper influence, or by any direct or implied promises, however slight, has the potential for being involuntary. *Loh*, 275 Mont. at 476, 914 P.2d at 602 (citing *State v. Phelps* (1985), 215 Mont. 217, 224, 696 P.2d 447, 451).

¶20 These factors, when applied in the present case, support the District Court's finding that Hoffman's confession was voluntary. The record does not suggest that Hoffman's age and level of education influenced the voluntariness of his confession. Hoffman was twenty-one years old when the Bozeman police questioned him about his son's injuries. Hoffman's psychological evaluations indicate that his understanding of social situations and social judgment is adequate, that he is well oriented and able to concentrate, and that he demonstrates average remote memory functions. Hoffman asserts that he was unable to understand his Miranda rights because he is of low, average intelligence and has completed only six years of formal education. However, we upheld the admissibility of a confession under similar circumstances in *State v. Campbell* (1996), 278 Mont. 236, 924 P.2d 1304. In

8

that case, the defendant was twenty-two years old; and although he had graduated from high school, his I.Q. was well below the normal range. *Campbell*, 278 Mont. at 241, 924 P.2d at 1308. We noted that the defendant appeared to understand his rights, and was able to converse coherently with the interviewing officer. *Campbell*, 278 Mont. at 243, 924 P.2d at 1309. Likewise, nothing in the transcript of Hoffman's February 15 interview suggests that his youth, or lack of education interfered with his ability to converse with Detective Johnson.

¶21 The record also demonstrates that Hoffman had prior experience with the criminal justice system and police interrogation. Before the 2001 conviction, he was arrested once in California for vandalism or malicious mischief, and twice in Montana for possession of alcohol, both misdemeanors. Similarly, in *State v. Hill*, 2000 MT 308, 302 Mont. 415, 14 P.3d 1237, we concluded that although the defendant's exposure to the criminal justice system was limited to a prior misdemeanor conviction, such exposure constituted sufficient prior experience. *Hill*, ¶¶ 47, 48. Hoffman's psychological evaluations support the conclusion that he was familiar with the criminal process. Dr. Joseph Rich noted that Hoffman could identify and describe the participants in the legal process, and was aware of the nature of the charges against him, as well as his available defenses.

¶22 The record also demonstrates that the length and method of the February interviews were not extraordinary. In *State v. Allies* (1979), 186 Mont. 99, 606 P.2d 1043, we determined that the use of a "good cop, bad cop" strategy for questioning a defendant may amount to psychological coercion. *Allies*, 186 Mont. at 113-14, 606 P.2d at 1050-51. However, the present case does not present an *Allies* scenario. Taken together, Hoffman's

9

interviews lasted no more than three hours. Though the police initiated the first interview, the second and third interviews were, in fact, requested by Hoffman. The interviews were conducted by only one officer, Detective Johnson, thus eliminating the potential for cross-questioning tactics. Hoffman cites the transcript of the February 15 interviews for examples of purportedly coercive questioning, the intensity of which, he believes, rendered his confession involuntary. However, Johnson's questions and Hoffman's answers do not indicate that Hoffman was subjected to the sort of treatment that occurred in *Allies*, or that he was lied to or threatened at any time.

¶23 Of paramount significance is Hoffman's concession–in his motion to the District Court, and now on appeal–that he received Miranda warnings from Detective Johnson, and that he waived those rights before making the statement he now seeks to suppress. The presence of timely and complete Miranda warnings supports a finding of voluntariness. *Beach*, 217 Mont. at 152, 705 P.2d at 106. Hoffman willingly agreed to be questioned by Detective Johnson. The sessions began only after Hoffman had signed a written waiver of his rights. Detective Johnson informed Hoffman that he could invoke the Fifth Amendment at any time. However, Hoffman never attempted to discontinue the interviews, and continuously offered forthright answers to Johnson's inquiries.

¶24 While Hoffman admits that he received a Miranda warning and waived his rights, he argues that his general psychological malaise, allegedly brought on by the effects of marijuana and sleep deprivation, coupled with his preoccupation with the condition of his son, who was being treated at a Salt Lake City hospital, affected his ability to comprehend

the Miranda warnings given by Detective Johnson. On this basis, Hoffman concludes that his waiver was involuntary. Hoffman relies on the report of his psychological examination, in which Dr. James Murphey identified a possible scenario in which Hoffman's alleged use of marijuana and lack of sleep could have impeded his cognitive abilities during the interview with Detective Johnson.

¶25 Questions concerning the effects of drugs or alcohol on a suspect's ability to voluntarily confess are regularly addressed by the federal circuit courts of appeals. In *United States v. Banks* (9th Cir. 2001), 282 F.3d 699, the Ninth Circuit Court of Appeals articulated the general rule that "[a] confession made in a drug or alcohol induced state . . . may be deemed voluntary if it remains 'the product of rational intellect and a free will' . . . ." *Banks*, 282 F.3d at 706 (citing *Medeiros v. Shimoda* (9th Cir. 1989), 889 F.2d 819, 823). The defendant in *Banks* argued that his statements to police were involuntary because he was under the influence of several intoxicants at the time of his interrogation. The circuit court rejected this argument, noting first that Banks offered no evidence, other than his own admission, that he had taken drugs or alcohol prior to the interrogation. The court also observed that even if the defendant had taken drugs or alcohol, the record demonstrated that the defendant was "calm and able to reason" and "able to understand the circumstances, follow instructions, and answer questions." *Banks*, 282 F.3d at 706.

¶26 Similarly, the Eighth Circuit Court of Appeals held, in *United States v. Casal* (8th Cir. 1990), 915 F.2d 1225, that "[i]ntoxication and fatigue do not automatically render a confession involuntary . . . ." *Casal*, 915 F.2d at 1229. Consistent with the rule articulated in

11

*Banks*, the Eighth Circuit Court concluded that the trial court did not commit reversible error when it upheld a confession of a defendant who had not slept for five days prior to being interrogated, but was able to intelligibly converse with police. *Casal*, 915 F.2d at 1229.

¶27 Applying this analysis in the present case, we conclude that Hoffman has not established that he was so overcome by the effects of marijuana or a lack of sleep that he was unable to comprehend his circumstances or understand the Miranda warnings proffered by Detective Johnson. Hoffman, like Banks, provided no evidence, other than his own admission, that he had taken drugs. Furthermore, the transcript of Hoffman's February 15 interview indicates that he was coherent enough to deny wrongdoing when asked about his treatment of Logan, and evade the more subtle, yet potentially damaging questions. During an August 10, 2001, hearing on Hoffman's motion to suppress, Detective Johnson testified that during the interrogation, Hoffman was calm and appeared to follow the questions. Based on Johnson's testimony, the District Court concluded that Hoffman's behavior was not so extraordinary as to warrant suspicion that he had used drugs.

¶28 The District Court also relied on the testimony of the State's witness, Dr. William Stratford, that "the demeanor of the defendant in that initial interview as determined from review of the transcript, did not appear to have any material effect . . . upon the 'defendant's ability to track'." Even on appeal, Hoffman is unable to point to specific times during the interrogation when marijuana or a lack of sleep influenced his statements. He offers only the bald assertion that due to his condition, the confession was involuntary. However, as *Banks* indicates, the mere presence of such a condition will not render a confession per se

12

involuntary. In fact, as we have explained, Hoffman understood his circumstances and was able to reason, follow instructions, and answer questions.

¶29 Therefore, we conclude that there exists substantial credible evidence in the record to support the District Court's finding that Hoffman's confession was made voluntarily. The District Court correctly denied Hoffman's motion to suppress the statement.

Issue Two

¶30 We next address the issue of whether the District Court erred when it refused to admit opinion testimony regarding Hoffman's mental state at the time he committed the offense of aggravated assault. Hoffman argues that the District Court should have allowed expert testimony that he did not act purposely or knowingly when he injured Logan. Hoffman cites Rules 702 and 704, M.R.Evid., for the proposition that an expert may testify about an ultimate issue at trial. He concludes that by precluding opinion testimony regarding his mental state, the District Court denied him due process of law. In response, the State argues that Rules 702 and 704, M.R.Evid., are trumped by the statutory prohibition against expert testimony regarding a defendant's mental state at the time he or she committed an offense. *See* § 46-14-213(2), MCA. According to the State, the District Court appropriately determined that expert testimony regarding Hoffman's state of mind at the time he committed the offense of aggravated assault was inadmissible.

¶31 We review a trial court's evidentiary ruling for abuse of discretion. *See Evert v. Swick*, 2000 MT 191, ¶ 11, 300 Mont. 427, ¶ 11, 8 P.3d 773, ¶ 11. The trial court has broad discretion to determine whether or not evidence is relevant and admissible, and absent a

13

showing of abuse of discretion, the trial court's determination will not be overturned. *See State v. Gollehon* (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263; *State v. Crist* (1992), 253 Mont. 442, 445, 833 P.2d 1052, 1054.

¶32    Section 46-14-213(2), MCA, provides:

> When a psychiatrist [or] licensed clinical psychologist . . . who has examined the defendant testifies concerning the defendant's mental condition, the psychiatrist [or] licensed clinical psychologist . . . may make a statement as to the nature of the examination and the medical or psychological diagnosis of the mental condition of the defendant. The expert may make any explanation reasonably serving to clarify the expert's examination and diagnosis, and the expert may be cross-examined as to any matter bearing on the expert's competency or credibility or the validity of the expert's examination or medical or psychological diagnosis. *A psychiatrist [or] licensed clinical psychologist . . . may not offer an opinion to the jury on the ultimate issue of whether the defendant did or did not have a particular state of mind that is an element of the offense charged.* [Emphasis added.]

¶33    In *State v. Santos* (1995), 273 Mont. 125, 902 P.2d 510, we considered, at length, the scope of § 46-14-213(2), MCA, concluding that "what the statute prohibits are expert opinions on the ultimate issue of whether the defendant actually possessed the requisite mental state at the time the offense was committed." *Santos*, 273 Mont. at 135, 902 P.2d at 516. We declined to construe § 46-14-213(2), MCA, any broader, and noted that the statute did not bar expert opinions regarding a defendant's mental capacity. *See Santos*, 273 Mont. at 135, 902 P.2d at 516.

¶34    Granting the State's motion in limine to preclude Dr. Rich's testimony regarding Hoffman's state of mind, the District Court offered the following remarks:

> I'm not going to permit Dr. Rich, or any of the other doctors, to express an ultimate opinion as to Mr. Hoffman's intent. I'm going to permit the

14

experts to testify in their opinion as to his capabilities of understanding, formulating, but I'm not going to permit them to reach that ultimate question. I believe that's a matter that the jury is going to have to decide and they can benefit from the testimony of all the witnesses who have testified in this matter in reaching a conclusion.

From Hoffman's response to the State's motion, it is clear that he intended to glean from Doctors Rich and Murphey, testimony that he was unable to control himself when he committed the offense of aggravated assault against his son, and that he did not act purposely or knowingly.

¶35 When weighed against the language of § 46-14-213(2), MCA, as well as our interpretation of the statute in *Santos*, Hoffman's reliance on Rule 704, M.R.Evid., is unpersuasive. Rule 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by a trier of fact." Rule 704, M.R.Evid. Rule 704 applies only to evidence that is "otherwise admissible." Rule 704, M.R.Evid. The rule does not benefit Hoffman since expert testimony regarding a defendant's state of mind at the time an offense is committed is inadmissable under § 46-14-213(2), MCA, and, therefore, is not evidence that would otherwise be admissible for purposes of Rule 704.

¶36 Hoffman also cites *State v. Fish* (1980), 190 Mont. 461, 621 P.2d 1072, in which we held that the District Court's exclusion of expert testimony regarding a defendant's mental state at the time the offense was committed was reversible error. *See Fish*, 190 Mont. at 473, 621 P.2d at 1079. In support of this conclusion, we observed that the "identification and description of a particular defendant's mental state, at a certain point in time, as effected [sic]

15

by surrounding circumstances" exceeds the scope of a jury's collective knowledge and expertise. *Fish*, 190 Mont. at 473, 621 P.2d at 1079.

¶37    *Fish* was decided in 1980, eleven years before the Montana legislature amended § 46-14-213(2), MCA, to include the current prohibition against expert testimony regarding a defendant's state of mind.  The 1979 version of the statute permitted the use of expert testimony to establish or refute a defendant's mental state at the time of an offense.  However, Hoffman's situation is controlled by the present language of § 46-14-213(2), MCA, which proscribes such testimony.  Accordingly, we conclude that the District Court did not abuse its discretion when it refused to admit opinion testimony regarding Hoffman's mental state at the time he committed the offense of aggravated assault.

Issue Three

¶38    We next address the issue of whether the District Court erred when it denied Hoffman's request for a lesser included offense instruction on the offenses of criminal endangerment, negligent endangerment, and partner and family member assault.  The statute defining included offenses is § 46-1-202(8), MCA, and the relevant portions of that statute are subsections (a) and (c), each offering alternate definitions of an included offense.  Subsection (a) defines an included offense as one that "is established by proof of the same or less than all the facts required to establish the commission of the offense charged."  Section 46-1-202(8)(a), MCA.  In contrast, subsection (c) provides that an included offense is one that "differs from the offense charged only in the respect that . . . a lesser kind of culpability suffices to establish its commission."  Section 46-1-202(8)(c), MCA.

16

¶39 During the settling of jury instructions, the State objected to Hoffman's proposed jury instructions, which set forth as lesser included offenses of aggravated assault, the offenses of criminal and negligent endangerment and partner and family member assault. Hoffman was given an opportunity to respond and otherwise present to the District Court any authority in support of the proposed instructions. In his dissent, Justice Trieweiler points out that, in arguing for the instructions, Hoffman referenced both subsections (a) and (c) of § 46-1-202(8), MCA. We note, however, that, although Hoffman's counsel made prefatory reference to subsection (a), the substance of his argument focused entirely on subsection (c). Hoffman's counsel argued as follows:

> Yes, Your Honor. Of course, we rely upon 46-1-202, subsection 8, wherein "'Included offense' means an offense that: is established by proof of the same or less than all the facts required to establish the commission of the offense charged;" or it can be where it, "differs from the offense charged only in the respect that . . . a lesser kind of culpability suffices to establish its commission."

> *In this case*, the charge is aggravated assault and we have proffered in the instructions criminal endangerment, negligent endangerment and family member assault. Criminal endangerment, we believe, falls under a "lesser kind of culpability suffices to establish its commission." And also, negligent endangerment would fall under that same category. [Emphasis added.]

¶40 Counsel's argument that criminal endangerment constitutes a "lesser kind of culpability" focuses solely on subsection (c). He presents no argument based upon subsection (a).

¶41 The dissent suggests that requiring a defendant to cite to a specific subsection of the statute places an unnecessary and unreasonable burden on trial counsel. Where, as here, the

17

subsections of § 46-1-202(8), MCA, set forth three separate and distinct definitions of "included offense" and there is precedent (*State v. Fisch* (1994), 266 Mont. 520, 881 P.2d 627) that negligent endangerment is not a lesser included offense of aggravated assault under subsection (8)(c), it was incumbent upon counsel to specify which subsection he was relying on. Here, Hoffman, without attempting to distinguish or challenge the holding in *Fisch*, clearly relied on subsection (c). The District Court naturally looked to the *Fisch* decision in resolving the issue.

¶42     The District Court rejected Hoffman's argument and denied the proposed instructions, citing *State v. Fisch* (1994), 266 Mont. 520, 524, 881 P.2d 626, 629, for the general rule that an offense is not a lesser included offense under subsection (c) if it requires proof of both a lesser mental state and a lesser degree of harm than the charged offense. The defendant, in *Fisch*, argued that he was entitled to a jury instruction on negligent endangerment which carries a lesser mental state and lesser degree of harm than the charged offense of aggravated assault. We rejected the defendant's theory, and determined that subsection (c) applies when no more than one element of an included offense differs from the charged offense. *See Fisch*, 266 Mont. at 524, 882 P.2d at 629. Applying this analysis, the District Court, in the present case, concluded that criminal endangerment, negligent endangerment, and partner and family member assault are too dissimilar from the offense of aggravated assault to warrant a lesser included offense instruction under § 46-1-202(8)(c), MCA. Although Justice Trieweiler in his dissent states that he believes the Court, in *State v. Fisch*, incorrectly

18

interpreted § 46-1-202(8)(c), MCA, Hoffman has not, either in the District Court or in this appeal, taken issue with the holding in *Fisch*.

¶43 On appeal, Hoffman argues that the District Court's decision was based on an incomplete application of § 46-1-202(8), MCA. According to Hoffman, a determination of whether a particular offense is an included offense requires an analysis of that offense under each of the three definitions contained in the statute. Hoffman concludes that under subsection (a) of the statute, criminal endangerment, negligent endangerment, and partner and family member assault are lesser included offenses of aggravated assault, and that the District Court's failure to consider subsection (a) as a basis for instructing the jury on each of these offenses, affected his "substantial rights." In response, the State argues that Hoffman declined to present this theory to the District Court, thereby failing to preserve the issue for appeal. According to the State, Hoffman relied only on subsection (c) of § 46-1-202(8), MCA, in support of his request for a lesser included offense instruction, effectively limiting his appeal to the parameters of that argument.

¶44 In the past, this Court has been reluctant to consider arguments made in support of jury instructions when those arguments were raised for the first time on appeal. Applying this general rule in *Fisch,* 266 Mont. at 524, 881 P.2d at 629, we declined to consider a defendant's argument under § 46-1-202(8)(a), MCA, on grounds that the defendant presented the argument for the first time on appeal. The defendant, in *Fisch*, appealed the trial court's denial of his lesser included offense instruction, arguing that the instruction was appropriate under both subsection (c) and subsection (a) of § 46-1-202(8), MCA. *Fisch*, 266 Mont. at

19

524, 881 P.2d at 629. We noted that, during trial, the defendant had relied solely on subsection (c). Stating that "[i]t is axiomatic that a party may not change the theory on appeal from that advanced in the district court," we concluded that the defendant's reliance on subsection (a) on appeal was improper *Fisch*, 266 Mont. at 524, 881 P.2d at 629. *Fisch* governs the present case, in which Hoffman did not make his subsection (a) argument to the District Court and, accordingly, failed to preserve it for appeal. Although Hoffman argued to the District Court that subsection (c) presented the appropriate avenue for determining whether criminal and negligent endangerment are lesser included offenses of aggravated assault, he did not raise that argument on appeal, and we decline to address it here.

¶45    Hoffman also argues that the District Court erred when it determined that partner and family member assault is not a lesser included offense of aggravated assault under subsection (c). He contends that the two offenses differ only with respect to the degree of bodily injury required by each. He notes that aggravated assault involves serious bodily injury while partner and family member assault involves only bodily injury. On this basis, Hoffman concludes that the District Court should have allowed the lesser included offense instruction on partner and family member assault.

¶46    We reject Hoffman's argument for two reasons. First, Hoffman has not demonstrated that Logan's injuries were so insubstantial as to warrant a "bodily injury" classification. "Serious bodily injury" is defined as an injury that "creates a substantial risk of death; causes serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ; or at the time of the injury, can reasonably be expected to result

20

in serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ." Section 45-2-101(65), MCA. According to Logan's doctors, although the long-term effects of his head injury are not immediately ascertainable, he undoubtedly was exposed to a substantial risk of death as a result of the damage to his brain. During trial, Hoffman declined to offer testimony to rebut these conclusions, or otherwise show that Logan's injury was not serious.

¶47     We also note that § 46-1-202(8)(c), MCA, does not support a conclusion that partner and family member assault is a lesser included offense of aggravated assault. Partner and family member assault requires proof that the victim was a family member, an element not included in aggravated assault. Accordingly, subsection (c), which defines a lesser included offense as one that "differs from the offense charged only in the respect that . . . a lesser kind of culpability suffices to establish its commission" does not apply. Therefore, we conclude that the District Court did not err when it denied Hoffman's request for a lesser included offense instruction.

Issue Four

¶48     Finally, we address the issue of whether Hoffman may impeach his guilty verdict with a juror affidavit in an attempt to obtain a new trial. Hoffman argues that the jury reached a verdict of guilty because the only alternative was to acquit. He cites a letter written by a member of the jury, Ms. Thornburg, to the District Court, indicating that the jury would have convicted Hoffman of a lesser offense if the members had received a lesser included offense instruction. Thornburg stated, in her letter, that she initially wanted to acquit Hoffman but

21

found him guilty only to avoid a hung jury. Hoffman contends that in light of Thornburg's statement, the guilty verdict was not unanimous, resulting in a denial of due process. On this basis, he concludes that the District Court should have granted his motion for a new trial. The State responds by noting that Rule 606(b), M.R.Evid., precludes the use of Thornburg's letter to impeach the verdict, and that the District Court properly exercised its discretion in denying Hoffman a new trial.

¶49 We review a trial court's ruling on a motion for a new trial for abuse of discretion. *See Hando v. PPG Industries, Inc.* (1995), 272 Mont. 146, 149, 900 P.2d 281, 283. A new trial is not warranted unless the defendant can show that he or she was "deprived of a fair and impartial trial." *State v. McNatt* (1993), 257 Mont. 468, 471, 849 P.2d 1050, 1052.

¶50 Rule 606(b), M.R.Evid., provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Three exceptions to this prohibition allow for the admission of juror testimony only if the evidence is used to determine whether the jury was influenced by extraneous, prejudicial information or any outside influence, or whether a particular juror has reached a specific determination as a result of chance. Rule 606(b), M.R.Evid.

¶51 In *Sandman v. Farmers Ins. Exchange*, 1998 MT 286, ¶ 29, 291 Mont. 456, ¶ 29, 969 P.2d 277, ¶ 29, we articulated the rationale underlying Rule 606(b), stating that,

22

[t]he rule is founded on public policy, and is for the purpose of preventing litigants or the public from invading the privacy of the jury room, either during deliberations of the jury or afterward . . . . [I]f after being discharged and

mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of an oath . . . .

¶52    As the District Court determined, none of the exceptions to Rule 606(b) were applicable.  Hoffman's proposed use of Thornburg's letter as evidence of the mental processes of the jurors is specifically prohibited.  Therefore, we conclude that the District Court did not abuse its discretion when it denied Hoffman's motion for a new trial.

## CONCLUSION

¶53    In summary, we hold that the District Court did not err when it denied Hoffman's motion to suppress and motion for a new trial.  We further hold that the District Court properly denied admission of opinion testimony regarding Hoffman's knowledge or purpose at the time of the charged offense.  Finally, we hold that the District Court did not err when it denied Hoffman's request for a lesser included offense instruction.  For these reasons, we affirm Hoffman's conviction.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JIM RICE

24

Justice Terry N. Trieweiler dissenting.

¶54 I dissent from the majority Opinion. I would reverse the judgment of the District Court for failure of the District Court to properly instruct the jury on lesser included offenses.

¶55 Without regard to this Court's decision in *State v. Fisch* (1994), 266 Mont. 520, 881 P.2d 626, which I believe incorrectly interpreted § 46-1-202(8)(c), MCA, Hoffman was at least, in this case, entitled to an instruction that the jury could find him guilty of the lesser included offense of criminal endangerment in violation of § 45-5-207, MCA (1997).

¶56 A person commits the offense of aggravated assault if that person "purposely or knowingly causes serious bodily injury to another." Section 45-5-202, MCA. A person commits the offense of criminal endangerment if that person "knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another. . . ." Section 45-5-207, MCA.

¶57 Section 46-1-202(9)(a), MCA, defines "included offense" as an offense that "is established by proof of the same or less than all the facts required to establish the commission of the offense charged. . . ." Subsection (9)(c) of the same statute defines "included offense" as an offense that "differs from the offense charged only in the respect that a less serious injury or risk to the same person . . . suffices to establish its commission."

¶58 By either of the above definitions, criminal endangerment is a lesser included offense of aggravated assault because 1) it is proven by the same or less than all the facts required to prove aggravated assault (*i.e.*, risk of injury rather than actual

26

injury); and 2) criminal endangerment differs from aggravated assault only in the sense that less serious injury or risk is required to establish its commission (*i.e.,* risk of injury as opposed to actual injury).

¶59 Section 46-16-607(2), MCA, provides as follows:

> A lesser included offense instruction must be given when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense.

¶60 The language of 46-16-607(2), MCA, is mandatory. In *State v. Castle* (1997), 285 Mont. 363, 948 P.2d 688, we held that:

> A defendant is therefore entitled to an instruction on a lesser included offense if *any* evidence exists in the record from which the jury could rationally find him guilty of the lesser offense and acquit of the greater. Section 46-16-607(2), MCA; *State v. Fisch* (1994), 266 Mont. 520, 522, 881 P.2d 626, 628. The purpose of this rule is to ensure reliability in the fact-finding process. It avoids the situation where the jury, convinced that the defendant is guilty of some crime, although not necessarily the crime charged, convicts the defendant rather than let his action go unpunished simply because the only alternative was acquittal.

*Castle,* 285 Mont. at 367, 948 P.2d at 690. (Citation omitted.)

¶61 Because Castle was denied a lesser included offense instruction which found support in the record, he was granted a new trial. For the same reason, Hoffman is also entitled to a new trial. Hoffman's counsel proposed a lesser included offense instruction, including the offense of criminal endangerment. That offense was supported by evidence in the record and the District Court was obligated by statutory and common law to give the instruction.

¶62 The majority Opinion acknowledges in ¶ 5 that the District Court's failure to give a criminal endangerment instruction is an issue on appeal and acknowledges in ¶ 13 that Hoffman proposed a lesser included offense instruction on criminal endangerment but then, inexplicably, fails to even discuss the failure to give the instruction in its Opinion. Furthermore, the majority's refusal to consider Hoffman's proposed instruction on negligent endangerment for failure to preserve that argument on appeal misstates Hoffman's obligation and misstates the actual record.

¶63 We have previously stated in *State v. Grimes*, 1999 MT 145, 295 Mont. 22, 982 P.2d 1037, what is necessary in order to preserve an issue regarding failure to give jury instructions for appeal. There we stated:

> When a party proposes a jury instruction and the trial court refuses to give the instruction, the court knows that there is an issue of law raised by the party seeking the instruction and, from the nature of the proposed instruction, knows the nature of the party's contentions. Therefore, we hold that when a party proposes an instruction which is rejected by the trial court, that party has made a sufficient objection for the purposes of § 46-16-410, MCA, and has no duty to make a further objection for the record.

*Grimes*, ¶ 39.

¶64 The suggestion by this Court in *State v. Fisch* that, in order to preserve an objection to a district court's refusal to give a proper instruction, a party must not only bring to the district court's attention the proper statutory authority for the instruction, but also the proper subsection of that statutory authority, places an unreasonable and unnecessary burden on trial counsel and reflects a detachment in this Court from the actual

28

realities of litigation. Giving this Court's renewed imprimatur to the unrealistic expectations of the *Fisch* opinion is wrong and simply an example of avoiding enforcement of the law by constantly increasing litigators' procedural obligations.

¶65 Furthermore, even if this Court was going to enforce the unrealistic procedural requirements of *State v. Fisch*, Hoffman's counsel satisfied them when he stated in support of his proposed instructions on lesser included offenses that:

> Of course, we rely on 46-1-202, subsection 8, wherein included offense means an offense that is *established by proof of the same or less than all the facts required to establish the commission of the offense charged*, or it can be where it differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission.

¶66 The italicized portion of counsel's argument obviously refers to § 46-1-201(8)(a), MCA. The remainder of his argument related to subparagraph (c).

¶67 That fact having been pointed out to the majority, it now adds to its Opinion the unprecedented requirement that counsel not only bring to the court the proper statutory authority for his proposed instruction, but that he spend as much time arguing in support of that section as he does in support of equally applicable statutory authority.

¶68 In other words, according to the majority, even though counsel preserved his objection to the court's failure to properly instruct the jury by proposing a proper instruction; and even though counsel took the additional unnecessary step of citing to the District Court the proper statutory authority for

his proposed instruction, the majority has in effect found that he waived his right to rely on the first authority by spending more time arguing distinct but equally applicable authority in the District Court. I have never seen a more result-oriented effort to affirm a criminal conviction. Nor, in the process, have I seen a more unreasonable burden placed on trial counsel.

¶69 The inevitable result will simply be more convictions which disregard the law. That might make the County Attorneys Association happy for at least a day, but it is not consistent with this Court's responsibilities.

¶70 The evidence in this case supported a criminal endangerment instruction. Hoffman's attorney offered the instruction and, although it should not have been required, brought to the Court's attention the correct statutory authority for the instruction. Hoffman's attorney appealed the District Court's refusal to instruct the jury that criminal endangerment is a lesser included offense and has again argued the appropriate authority for the instruction. This Court acknowledges the issue on appeal but refuses to even discuss it, misstates what is required of Hoffman to preserve the issue on appeal and then mischaracterizes the arguments actually made by Hoffman's counsel in the District Court. I know this Court is busy, but litigants deserve better.

¶71 For these reasons, I dissent from the majority Opinion.

/S/ TERRY N. TRIEWEILER

Justice Patricia O. Cotter joins in the foregoing dissent.

/S/ PATRICIA COTTER

30