No.  94-211

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

     Plaintiff and Appellant,

  v.

BENEDICT JOHN HERMES,

     Defendant and Respondent.

FILED

OCT 19 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Nineteenth Judicial District,
                In and for the County of Lincoln,
                The Honorable Robert S. Kelier, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Hon. Joseph P. Mazurek, Attorney General; Jennifer
          Anders, Ass't Attorney General, Helena, Montana

          Charles Sprinkle, Lincoln County Attorney; Bernard
          G. Cassidy, Deputy County Attorney, Libby, Montana

     For Respondent:

          Amy N. Guth, Public Defender's Office, Libby
          Montana

Submitted on Briefs:  July 27, 1995

Decided:  October 19, 1995

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The State of Montana (State) appeals from the order of the Nineteenth Judicial District Court, Lincoln County, suppressing a statement of Benedict Hermes (Hermes). We affirm.

We address the following issues on appeal:

1. Did the District Court err in suppressing Hermes' statement after finding that the statement was involuntary?

2. Did the District Court err in determining that the State could not use Hermes' statement for impeachment purposes?

In September of 1993, Detective Craig Martin (Martin) of the Lincoln County Sheriff's Office received information from Jeff Wedel (Wedel), a social worker with the Montana Department of Family Services, that Hermes had sexually assaulted S.S., a minor child. Martin interviewed S.S. and her father about the incident on September 23, 1993. Later the same day, Martin and Wedel went to Hermes' residence in an isolated part of Lincoln County, where Martin interviewed Hermes in Wedel's pickup truck. Martin recorded the statement.

On October 12, 1993, the State charged Hermes by information with the offense of sexual intercourse without consent. Hermes pled not guilty.

Hermes subsequently moved to suppress the statement taken by Martin on the grounds that the statement was involuntary. The District Court held a hearing on the motion at which Martin, Hermes and Hermes' father testified. Thereafter, the court entered

2

findings with regard to the circumstances under which Martin obtained Hermes' **statement** and **ultimately** found that the statement was involuntary. On that basis, the District Court entered its order and memorandum suppressing the statement **from** use at trial for all purposes. The State appeals.

1. Did the District Court err in suppressing Hermes' statement after finding that the statement was involuntary?

Psychological pressure exerted upon a defendant to procure a confession renders the confession involuntary. State v. Allies (1979), 186 Mont. 99, 112, 606 P.2d 1043, 1050 (citations omitted). An involuntary confession violates a criminal defendant's Fifth and Fourteenth Amendment privileges against self-incrimination and may not be used as evidence at trial without violating the defendant's Fourteenth Amendment right to due process of law. State v. Lenon (1977), 174 Mont. 264, 271, 570 P.2d 901, 906 (citations omitted). Moreover, § 46-13-301(1), MCA, specifically authorizes a motion to suppress any confession or admission given by a defendant on the basis that the statement was involuntary. The State has the burden of proving by a preponderance of the evidence that the confession or admission was voluntary. Section 46-13-301(2), MCA.

By placing the "preponderance of evidence" burden of proof on the State, § **46-13-301,** MCA, clarifies that the question of voluntariness is primarily one of fact. We consistently have emphasized that point by stating, for example, that " [a]n analysis of the voluntariness of a confession is a factual question which must take into account the totality of the circumstances." State

3

v. Mayes (1992), 251 Mont. 358, 376, 825 P.2d 1196, 1208 (citation omitted).

The District Court listened to the taped interview at issue and held a hearing on the admissibility of Hermes' statement. The court found that, after Hermes agreed to talk with Martin, Martin's tone of voice and questions changed as he "[went] o n the offensive." The court noted that the interview took place in a "small enclosure" with a third person sitting behind Hermes and found that this was a coercive setting. The court also noted that Martin did not advise Hermes of his rights pursuant to Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

The District Court set forth some of the questions Martin asked Hermes. Each such question was phrased in a way that assumed Martin sexually assaulted S.S. The court noted that Martin never asked Hermes what happened and found that Martin asked Hermes exclusively accusatory questions. The District Court found that Martin's accusatory questions compounded the coercion already present in the interview setting.

In an order and supporting memorandum dated February 10, 1995, the District Court made findings regarding the coercive nature of Martin's interrogation of Hermes and ultimately found that the State did not prove by a preponderance of the evidence that Hermes' confession was voluntary. Additionally, the court found that Martin used psychological pressure to induce Hermes' confession and, as a result, that Hermes' confession was involuntary.

We review a district court's findings of fact regarding

4

suppression hearing evidence to determine whether they are clearly erroneous. State v. Kaluza (1993), 262 Mont. 360, 361, 865 P.2d 263, 264; State v. Cope (1991), 250 Mont. 387, 396, 819 P.2d 1280, 1286. A finding of fact is clearly erroneous if it is not supported by substantial evidence or, if it is so supported, the trial court misapprehended the effect of the evidence or if this Court is left with a definite and firm conviction that a mistake has been committed. State v. Bower (1992), 254 Mont. 1, 7, 833 P.2d 1106, 1110 (citation omitted).

In this regard, we note that our recent decisions in State v. Stubbs (Mont. 1995), 892 P.2d 547, 52 St.Rep. 232, and in State v. Rushton (1994), 264 Mont. 248, 870 P.2d 1355, inadvertently reverted to a "substantial credible evidence" standard of review for a court's findings relating to suppression evidence. We take this opportunity to reaffirm our holding in Cope, with regard to the standard of review, that "we will not overturn a District Court's findings of fact regarding suppression hearing evidence unless those findings are clearly erroneous." Cope, 819 P.2d at 1286.

Voluntariness depends on the facts of each case, with no fact being dispositive. Allies, 606 P.2d at 1050 (citation omitted). In determining whether a confession is voluntary under the totality of circumstances test, courts consider the characteristics of the defendant and what transpired during the interview. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862. We have reviewed district court findings of fact

5

under the totality of circumstances test many times and, in doing so, we have determined that the following factors, among others, are relevant: the defendant's age and level of education (State v. Davison (1980), 188 Mont. 432, 442, 614 P.2d 489, 495); the interrogation technique and whether the defendant was advised of his Miranda rights (Allies, 606 P.2d at 1050); the defendant's prior experience with the criminal justice system and police interrogation (State v. Craig (1993), 262 Mont. 240, 242, 864 P.2d 1240, 1242); and the defendant's background and experience (Matter of J.W.K. (1986), 223 Mont. 1, 6, 724 P.2d 164, 167).

The record before us is replete with evidence supporting the District Court's findings regarding the circumstances surrounding Hermes' confession and its ultimate finding that Hermes' confession was involuntary. At the time of the interview, Hermes resided in an isolated area of Lincoln County in a house without electricity. He received formal education through approximately the seventh grade level. He testified that, at the time Martin took his statement, he was unaware of his Miranda rights. Additionally, Hermes had neither been charged with a crime nor interrogated by the police prior to this occasion.

Upon arriving at Hermes' residence, Martin informed Hermes that he would like to ask him some questions, but failed to disclose the subject he sought to discuss with Hermes. Martin interviewed Hermes in the club cab of Wedel's pickup truck with Martin in the driver's seat, Hermes in the passenger seat, and Wedel in the back seat. The pickup truck's doors were closed

6

"suppressed from use at trial in this matter for all purposes." The State argues that it is entitled to use Hermes' statement for impeachment purposes in the event Hermes testifies at trial and, as a result, that the District Court erred as matter of law. We review a district court's conclusions of law to determine whether they are correct. Stubbs, 892 P.2d at 550 (citations omitted).

Relying on Miranda and Mincey v. Arizona (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290, the State argues that a defendant's prior incriminating statements properly may be used for impeachment, despite the lack of Miranda warnings, if the defendant testifies in a manner inconsistent with his earlier statements. The State concedes, however, that the question of whether the statement is admissible for impeachment purposes turns on the question of voluntariness.

We concluded above that the District Court's findings of fact regarding the involuntary nature of Hermes' statement were not clearly erroneous. Thus, in addressing the first issue, we essentially determined this issue as well. Even under the authorities relied on by the State, "*any* criminal trial use against a defendant of his involuntary statement is a denial of due process of law . . ." See, e.g., Mincey, 437 U.S. at 398. We hold, therefore, that the District Court did not err in concluding that the State could not use Hermes' statement for impeachment purposes.

Affirmed

_____
Justice

8

**We    concur:**

_J. A. Turnage_
_____
Chief Justice

_William E. Smith_

_Jerry Trieweiler_

_W. William Leaphart_
_____
Justices