

DA 13-0089

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 161

STATE OF MONTANA,

        Plaintiff and Appellant,

   v.

CLIFFORD OLD-HORN,

        Defendant and Appellee.

| APPEAL FROM: | District Court of the Twentieth Judicial District, In and For the County of Lake, Cause No. DC 10-75 Honorable C.B. McNeil, Presiding Judge |
|---|---|

COUNSEL OF RECORD:

       For Appellant:

              Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant Attorney General, Helena, Montana

              Mitch Young, Lake County Attorney, Jessica Cole-Hodgkinson, Deputy County Attorney, Polson, Montana

       For Appellee:

              Wade Zolynski, Chief Appellate Defender, Lisa S. Korchinski, Assistant Appellate Defender, Helena, Montana

Submitted on Briefs: May 28, 2014
Decided: June 24, 2014

Filed:

_____
                         Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 The State appeals from the order of the Twentieth Judicial District Court, Lake County, suppressing Defendant Clifford Old-Horn's statements to police and granting him a new trial. We affirm.

¶2 The issue presented on appeal is whether the District Court erred when it granted Old-Horn's motion to suppress on the grounds that his statements to police were made involuntarily.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In 2007, Old-Horn was halfway through a five-year sentence for burglary in the Great Falls Regional Prison. He had a close relationship with his cellmate, Robert Gardner, who was serving a 50-year sentence for deliberate homicide. One night, Old-Horn disclosed to Gardner that he had previously acted as a confidential informant, and said he had been holding on to some information about a "murder rap." He offered to provide this information through Gardner, in the hope that Gardner would receive a reduction in his sentence. Gardner contacted a detective in Great Falls and asked to speak with two drug investigators with whom Old-Horn had previously cooperated, saying he had friends who had information about the unsolved murder of Harold Mitchell, Jr. Detective Jay Doyle, the lead investigator on the Mitchell homicide, made arrangements to meet with Gardner. Gardner requested a reduction in his sentence and immunity from prosecution for his friends, whom he did not identify.

¶4 Doyle discussed Gardner's request with Lake County Attorney Mitch Young. Young wrote a letter on December 3, 2007, in which he stated:

2

> After speaking with Detective Doyle, I would agree not to file charges against your sources for any collateral crimes committed by them in the course of this incident. I will not, however, offer immunity for any acts which would constitute accountability for the homicide of Mr. Mitchell. If either of the sources was involved in the homicide, their cooperation with the police would certainly be viewed favorably in any subsequent proceedings.

Doyle sent this letter to Gardner, enclosing a letter of his own in the same envelope. That letter said, "Mitch [Young] did agree to give immunity to your friends." Gardner shared these letters with Old-Horn.

¶5 On April 2, 2008, Old-Horn wrote a letter to Doyle identifying himself as one of Gardner's witnesses. He said, "[I]f I testify you already promised me immunity and I still have that in writing but would the prosecutor be willing to suspend the rest of my five year sentence?" Old-Horn said he was outside the Mitchell house at the time of the homicide and identified two other individuals responsible for Mitchell's death.

¶6 Doyle arranged an interview with Old-Horn at the Great Falls Regional Prison on April 14, 2008. Doyle, Young, and Detective Mike Sargeant met with Old-Horn outside the interview room. Doyle and Sargeant then took Old-Horn into the interview room. Doyle told Old-Horn he would need to read him his *Miranda* rights, and then asked whether Old-Horn had seen the letters sent to Gardner. Old-Horn said he had. Doyle then continued reading Old-Horn his *Miranda* rights, and Old-Horn signed a waiver. Old-Horn initially told Doyle and Sargeant he was outside the house when the homicide occurred. As the interview progressed, Sargeant told Old-Horn, "One of the things that you have to understand; even if you . . . were in the house doesn't make you a participant." Old-Horn responded, "[S]o if I seen it happen and I didn't stop it, then I ain't got nothing to do with this then, I mean."

3

Doyle said, "If you didn't actively have any active participation in planning that thing out, you know that's cool. We can work with that." Old-Horn then admitted he was inside the house and gave a full statement about the events leading to Mitchell's death.

¶7 Two years later, on April 22, 2010, Young filed an information charging Old-Horn with deliberate homicide under the felony murder rule, § 45-5-102(1)(b), MCA. The information alleged that Old-Horn aided or abetted an attempted robbery, during the course of which another individual caused Mitchell's death. Young moved to have Old-Horn transported to the Lake County Detention Center on or before April 28, 2010, for his initial appearance on the deliberate homicide charge. Old-Horn was told he was being transported for a court hearing, but was not told what the hearing was about.

¶8 Old-Horn, meanwhile, had written another letter to Doyle after learning that the second witness referred to by Gardner had been arrested. On April 28, 2010, Doyle and Sargeant met with Old-Horn at the Lake County Detention Center. Sargeant told Old-Horn, "Well, Jay [Doyle] found out that you really needed to get back here, and like I said earlier, he pulled some strings, and you over here [sic]. He listened to what you are saying. It is our information that you want to visit with us about this." Doyle asked Old-Horn if he was surprised when he received the transport order. Sargeant asked Old-Horn if he had been told why he was there, and Old-Horn said he had not. Sargeant then said, "It is our understanding that you would like to revisit with some of the facts and circumstances on this case." Old-Horn said, "My main concern was, you know [the second witness] and I came forward because, you know, Mitch Young said that we wouldn't be, that we would have immunity from all this." Doyle and Sargeant did not immediately respond to Old-Horn's concerns

about the second witness's arrest, and continued to question him about the Mitchell homicide. Doyle told Old-Horn, "I know that Mitch [Young] has, as far as I know, he's not changed his mind. I think he talked to you in Great Falls. . . . Ever since then, it has been the same thing." Old-Horn was not informed that he had been charged with deliberate homicide until after the interview.

¶9 On December 15, 2010, Old-Horn moved to exclude his statements to Doyle and Sargeant on the grounds they were involuntary. He claimed he would not have come forward as a witness, given statements to police, or waived his *Miranda* rights if he had not been led to believe he had immunity. The District Court denied the motion without an evidentiary hearing, reasoning, "The 'immunity' letter from the Lake County Attorney expressly excluded any acts which would constitute accountability for the homicide. That is exactly the charge against the Defendant for which he did not receive prosecution immunity."

¶10 A jury trial was held beginning on June 20, 2011. Old-Horn testified in his defense and claimed the story he gave to Doyle and Sargeant was fabricated. He was convicted and later sentenced to 100 years in the Montana State Prison. Old-Horn appealed his conviction to this Court, claiming the District Court erred by denying his motion to exclude the statements and failing to hold an evidentiary hearing. On November 7, 2012, this Court remanded with instructions to hold an evidentiary hearing and enter written findings of fact and conclusions of law. The remaining issues raised in the appeal were held in abeyance.

¶11 The evidentiary hearing was held January 4, 2013. Old-Horn testified that after reading the letters from Young and Doyle, he thought he was promised immunity from

5

prosecution. He said he waived his *Miranda* rights during the 2008 interview because Doyle asked if he had seen the letters immediately before reading the *Miranda* warning. Old-Horn said, "[T]he way he talked to me was like, 'So you know, everything is all right. I'm going to go ahead and read you your *Miranda* rights now.' So I figured, you know, I don't have nothing to worry about if I'm given immunity." Old-Horn testified that at the second interview, he still believed he had immunity, in part because two years had passed and he had not, to his knowledge, been charged. Old-Horn testified he would not have given either interview unless he believed he was immune from prosecution. He also said he would not have testified at his trial if the earlier statements had not been admitted as evidence. He repeated his claim that the story was fabricated.

¶12 The District Court vacated the judgment, ordered a new trial, and ordered Old-Horn's letter to Doyle, the 2008 and 2010 statements, and Old-Horn's trial testimony excluded from evidence. This Court dismissed the remainder of Old-Horn's appeal, previously held in abeyance, as moot. Pursuant to § 46-20-103(2), MCA, the State appealed from the District Court's order suppressing Old-Horn's confessions and granting a new trial.

**STANDARD OF REVIEW**

¶13 This Court reviews a district court's decision on a motion to suppress to determine whether its findings of fact are clearly erroneous and whether they are correctly applied as a matter of law. *State v. Scarborough*, 2000 MT 301, ¶ 29, 302 Mont. 350, 14 P.3d 1202. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if this Court is definitely and firmly convinced that the district court made a mistake. *Scarborough*, ¶ 30. Substantial evidence

6

must be "'more than a mere scintilla of evidence, but may be less than a preponderance of the evidence.'" *Scarborough*, ¶ 30 (quoting *Gypsy Highview Gathering Sys., Inc. v. Stokes*, 221 Mont. 11, 15, 716 P.2d 620, 623 (1986)).

¶14 The question of whether a defendant has given a confession voluntarily is a factual determination within the province of the district court. *State v. Hayworth*, 1998 MT 158, ¶ 20, 289 Mont. 433, 964 P.2d 1. The district court has the opportunity to observe the demeanor of witnesses and is in the best position to determine their credibility. *State v. Gittens*, 2008 MT 55, ¶ 27, 341 Mont. 450, 178 P.3d 91. We will not, on appeal, reweigh the evidence or substitute our evaluation of the evidence for that of the district court. *Gittens*, ¶ 27.

## DISCUSSION

¶15 *Whether the District Court erred when it granted Old-Horn's motion to suppress on the grounds that his statements to police were made involuntarily.*

¶16 The true test of admissibility of a confession is whether it was given "'freely, voluntarily, and without compulsion of any sort.'" *State v. Allies*, 186 Mont. 99, 109, 606 P.2d 1043, 1049 (1979) (quoting *Wilson v. United States*, 162 U.S. 613, 623, 16 S. Ct. 895, 899 (1896)). A defendant may move to suppress a confession or admission that was given involuntarily. Section 46-13-301, MCA. The burden then lies with the prosecution to prove by a preponderance of the evidence that the confession was voluntary. Section 46-13-301, MCA.

¶17 When determining the voluntariness of a confession, the district court must take into account the totality of the circumstances, including the interrogation techniques used by

police; the defendant's age and level of education; the defendant's prior experience with the criminal justice system; the defendant's demeanor, coherence, articulation, and capacity to make use of his or her faculties; and whether the defendant was advised of his or her *Miranda* rights. *State v. Hoffman*, 2003 MT 26, ¶¶ 18-19, 314 Mont. 155, 64 P.3d 1013; *State v. Loh*, 275 Mont. 460, 475-76, 914 P.2d 592, 601-02 (1996). A confession induced by any threat of violence, improper influence, or by any direct or implied promise, however slight, may be involuntary. *Hoffman*, ¶ 19; *Loh*, 275 Mont. at 476, 914 P.2d at 602.

¶18 The District Court found Old-Horn wrote the letter to Doyle, waived his *Miranda* rights, and gave his 2008 and 2010 statements under the belief he had been granted immunity from prosecution. The District Court also found Old-Horn's belief was reasonable. Although the District Court denominated these findings conclusions of law, they address factual matters. Therefore, we treat them as findings of fact, reviewable for clear error. *See Wray v. State Compen. Ins. Fund*, 266 Mont. 219, 222, 879 P.2d 725, 727 (1994); *Wheeler v. Carlson Transp.*, 217 Mont. 254, 263, 704 P.2d 49, 54-55 (1985). We hold the District Court's findings are supported by substantial evidence.

¶19 Old-Horn testified that after reading the letters from Young and Doyle, he believed he had been promised immunity. The State argues Old-Horn could not reasonably have interpreted the letters to grant him unqualified immunity. Instead, the State claims the letters clearly proposed two alternatives: if Old-Horn was not involved in the homicide, he would not be prosecuted for "collateral crimes"; or, if he was involved, his cooperation would be "viewed favorably in any subsequent proceedings." The State's interpretation of the letters would have required Old-Horn, who was 21 years old and had an eighth-grade education, to

discern between "collateral crimes" and "acts which would constitute accountability." In the context of a felony murder case, where Old-Horn's participation in an attempted robbery formed the basis for a deliberate homicide charge, this distinction is not readily apparent even to those trained in the law. It is reasonable that Old-Horn would instead have relied on the explanation given in Doyle's letter, which stated simply, "Mitch [Young] did agree to give immunity to your friends." This is exactly what Old-Horn testified, saying, "After reading the first one, I was a little conflicted but the second one made me believe that I'm okay, that I was good. As long as I came up with the information, that I wouldn't be prosecuted for this."

¶20   Old-Horn also testified that when he waived his *Miranda* rights at the beginning of the 2008 interview, he believed he had nothing to worry about because he had been granted immunity. The transcript of the interview supports this testimony. Doyle told Old-Horn he needed to read him his *Miranda* rights, then stopped and instead asked Old-Horn whether he had received the letters sent to Gardner. After explaining Gardner's friends would be "taken care of" as long as they were not involved in the homicide, Doyle resumed the *Miranda* warning. In this context, it was reasonable for Old-Horn to believe he had been granted immunity, and therefore had no need to ask for an attorney or exercise his right to remain silent.

¶21   The State claims Old-Horn's initial statements, in which he attempted to distance himself from the homicide, show he understood the immunity offer was limited, and therefore did not believe he was immune from prosecution when he gave his full confession. This assertion is undermined by evidence of verbal assurances given to Old-Horn during the

9

2008 interview. Sargeant explicitly told Old-Horn being in the house would not make him a participant. Old-Horn's response shows he understood this to mean he would not be prosecuted even if he witnessed the homicide. Doyle echoed Sargeant's statements, telling Old-Horn that as long as he did not participate in planning the murder, he could "work with that." It was only after these assurances were given that Old-Horn gave a full confession. There is substantial evidence showing Old-Horn reasonably believed he would not be prosecuted for his involvement in the homicide.

¶22 Old-Horn testified he still believed he had immunity when he waived his rights at the beginning of the 2010 interview. At the beginning of the interview, Old-Horn stated he did not understand why the second witness had been arrested, because "Mitch Young said that we wouldn't be, that we would have immunity from all this." Old-Horn was not informed he had already been charged with deliberate homicide, and his belief he had been granted immunity was never contradicted by Doyle and Sargeant. Doyle continued to assure Old-Horn that Young had "not changed his mind." Substantial evidence supports the finding that Old-Horn reasonably believed he had been given immunity at the time he gave the 2010 interview.

¶23 The State argues Old-Horn's testimony is not credible, because at his trial and in subsequent proceedings, he claimed his confession was fabricated. As we have observed, Old-Horn's testimony is not the only evidence supporting the District Court's findings. The letters and interview transcripts are consistent with his testimony and also support the District Court's findings that Old-Horn reasonably believed he had been granted immunity.

10

Furthermore, the credibility of witnesses is within the province of the District Court, and we will not attempt to reweigh the evidence on appeal. *Gittens*, ¶ 27.

¶24 The State also argues the District Court incorrectly applied its findings of fact when it concluded that Old-Horn did not voluntarily waive his *Miranda* rights and that the State failed to meet its burden of proving that Old-Horn's statements were voluntary. A confession induced by "any direct or implied promises, however slight," may be involuntary. *Hoffman*, ¶ 19; *Loh*, 275 Mont. at 476, 914 P.2d at 602. The District Court found that Old-Horn's waiver of his *Miranda* rights and his 2008 and 2010 statements were induced by the promise of immunity. The District Court correctly applied this finding when it concluded Old-Horn's waiver of his *Miranda* rights was involuntary.

¶25 The District Court also found Old-Horn was not told until the end of the 2010 interview that he had already been charged with deliberate homicide. The transcript of the interview shows Doyle and Sargeant carefully and deliberately avoided contradicting Old-Horn's belief he had been granted immunity by ignoring his questions and affirmatively telling him Young had "not changed his mind." We will not condone the use of deception to obtain a confession. *See State v. Reavley*, 2003 MT 298, ¶ 16, 318 Mont. 150, 79 P.3d 270; *State v. Phelps*, 215 Mont. 217, 225, 696 P.2d 447, 452 (1985); *Allies*, 186 Mont. at 113, 606 P.2d at 1051.

¶26 Though not specifically addressed by the District Court's findings, we are also concerned by the manner in which Doyle administered the *Miranda* warning at the beginning of the 2008 interview. This warning must be meaningful, rather than "mere lip service." *State v. Grimestad*, 183 Mont. 29, 37, 598 P.2d 198, 203 (1979). When a defendant's

*Miranda* rights are downplayed and he is assured that he is not a suspect, the waiver of those rights may be considered involuntary. *Grimestad*, 183 Mont. at 37, 598 P.2d at 203. The *Miranda* warning given by Doyle was interwoven with explanations and assurances about the immunity offer. Old-Horn testified that Doyle's reading of the *Miranda* warning made him feel that everything was all right, and the waiver was simply a formality. Doyle emphasized the immunity offer in a way that downplayed Old-Horn's rights to remain silent and to be represented by counsel. The District Court correctly concluded that the State failed to meet its burden of proving that Old-Horn's statements were voluntary.

¶27 The State claims the District Court failed to conduct a fact-intensive inquiry into the totality of the circumstances. A district court's findings and conclusions need not be exhaustive so long as they dispose of the material issues and provide a sufficiently clear rationale. *Williams v. State*, 2002 MT 189, ¶ 27, 311 Mont. 108, 53 P.3d 864; *In re Mental Health of S.C.*, 2000 MT 370, ¶ 14, 303 Mont. 444, 15 P.3d 861. The District Court stated in its order that it considered exhibits including the transcripts and recordings of the 2008 and 2010 interviews, as well as the testimony of Doyle and Old-Horn at the evidentiary hearing. The District Court's order makes specific findings of fact regarding the content of the letters written by Young, Doyle, and Old-Horn; the fact that Old-Horn waived his *Miranda* rights; the fact that Doyle and Sargeant failed to inform Old-Horn of charges against him during the 2010 interview; and Old-Horn's testimony that he believed he had been promised immunity. The District Court clearly reasoned that the letters led Old-Horn to believe he had been granted immunity; Old-Horn waived his *Miranda* rights believing he had been granted immunity; this belief was furthered by the failure to inform Old-Horn of charges against him;

12

and his confessions were, as a result, involuntary.  The District Court considered the totality of the circumstances and provided a sufficiently clear rationale.

¶28    Finally, the State asks this Court to address the remaining issues raised by Old-Horn in his direct appeal, previously held in abeyance and then dismissed as moot after the District Court ordered a new trial.  Because we affirm the order of the District Court, we decline the State's request.

¶29    For the reasons stated above, the order of the District Court granting Old-Horn a new trial and suppressing his letter to Doyle, his 2008 and 2010 statements, and his trial testimony is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE