CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 Jasmine Nicole Eskew appeals from her conviction of felony Assault on a Minor in violation of § 45-5-212, MCA. We reverse the conviction.
¶2 We restate the issue on appeal as follows:
Did the District Court properly admit evidence of Eskew’s admissions or confession made during police interrogation ?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 On September 18,2012, Eskew called 911 in Great Falls to report that her six-month-old daughter Brooklynn was unresponsive and not breathing. Paramedics arrived and found Brooklynn as her mother described, and took her to the hospital. As the paramedics arrived, Eskew’s recent boyfriend Greg Robey was seen leaving the residence. Brooklynn had a severe head injury with subdural bleeding on her left side. While a CT scan showed that her skull was fractured, medical personnel did not identify that fact until later. Medical personnel suspected child abuse and contacted law enforcement, telling responding officers that Brooklynn’s injury resulted from shaking.
¶4 Shortly after Eskew arrived at the hospital in Great Falls, law *326 enforcement officers talked to her about Brooklynn’s condition.[1] They took her to the police station, away from the hospital and from Brooklynn. They placed her alone in an interrogation room where she was upset and sobbing repeatedly that “I want my baby.”
¶5 After a considerable period of time, two Great F alls Police officers entered the interrogation room. They read Eskew a Miranda advisory and then gave her a printed copy. Eskew read and signed the Miranda advisory. The two officers assured Eskew that her daughter was being cared for and that as soon as they finished talking to her she would be reunited. They told her that they needed an accurate description of what had happened so that it could be passed on to the doctors. They told her that Brooklynn could not be adequately treated unless she answered their questions and that the sooner they finished the interview the sooner they could get her back to her daughter. “We’ll get this over with and get you back up to your daughter, okay?” Officers told Eskew that she was the only one who could help Brooklynn, and that Eskew was “hurting” her daughter by not giving them the responses they expected about the injury to the baby.
¶6 Eskew often responded to repeated questions with only a few words, and many of her responses were transcribed as “inaudible.” Eskew told the officers how she found her daughter in distress and had tried to console her by rocking her. Eskew denied the officers’ allegations that she shook Brooklynn, stating that she “didn’t shake her or anything.” The officers told Eskew that they already knew what had happened and demanded that Eskew admit that her description of “rocking” Brooklynn to console her was actually “shaking.” Eskew repeatedly denied shaking Brooklynn.
¶7 The officers gave Eskew a doll to demonstrate how she rocked her daughter. Eskew did so, but the officers insisted that she do it differently and that she “make the doll’s head rock!” The interrogation went on for about four hours. Ultimately Eskew relented and shook the doll for the officers and told them that she had shaken her daughter.
¶8 Brooklynn and her mother were never reunited. Brooklynn was transferred to Spokane for treatment while Eskew was under interrogation. When Brooklynn arrived in Spokane, medical personnel detected her skull fracture on the CT scan, and she showed other signs of non-accidental injury. She died several days later while Eskew was in jail. A subsequent autopsy revealed that Brooklynn had died from brain injuries caused by a single blow to the head, and that there was *327 no evidence that she had any injury that resulted from having been shaken.
¶9 The State charged Eskew with deliberate homicide in the death of her daughter. Prior to trial Eskew moved to suppress the results of the interrogation, contending that her admissions were not voluntary. On December 2, 2013, the District Court held the hearing on the motion to suppress. The two Great Falls Police officers who conducted the interrogation testified, along with two experts proffered by the defense. The District Court heard that testimony and watched the video of the interrogation.
¶10 District Court found that the police officers deliberately lied to Eskew by telling her that the interview was necessary to get information to treat Brooklynn, by telling her that her responses to their questions could determine whether her daughter received the proper medical treatment, and by telling her that she would be reunited with her daughter as soon as the interrogation was over. The District Court found that the real purpose of the interview was to obtain admissions from Eskew that fit the officers’ pre-determination that she had caused her daughter’s injury by shaking her. The District Court found that Eskew did not understand that the officers were questioning her in order to charge her with a serious crime. The District Court denied the motion to suppress.
¶11 At trial the State relied heavily upon the admissions that Eskew made during the interrogation. The jury found Eskew not guilty of deliberate homicide, but guilty of felony assault on a minor pursuant to § 45-5-212, MCA. Eskew spent almost two years in jail by the time of sentencing. The District Court imposed a five-year term to the Montana Department of Corrections. Eskew appeals her conviction.
STANDARD OF REVIEW
¶12 This Court reviews a district court’s decision on a motion to suppress to determine whether the findings of fact meet the clearly erroneous standard, and whether the findings are correctly applied as a matter of law. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence, or if this Court is definitely and firmly convinced that the district court made a mistake. Whether a confession is voluntary is a factual issue and the district court is in the best position to determine the credibility of witnesses who testify. This Court will not re-weigh evidence considered by the district court or substitute our own evaluation of that evidence. State v. Old-Horn, 2014 MT 161, ¶¶ 13-14, 375 Mont. 310, 328 P.3d 638.
*328 DISCUSSION
¶13 Issue: Did the District Court properly admit evidence ofEskew’s admissions or confession made during police interrogation ?
¶14 The law regarding confessions in criminal proceedings is well established in Montana. Voluntary confessions are generally admissible in criminal prosecutions, and they are recognized as an important tool for law enforcement. State v. Allies, 186 Mont. 99, 109, 606 P.2d 1043, 1048 (1979). A voluntary confession is the result of a free choice by the suspect, and “if he has willed to confess, it may be used against him.” State v. Davison, 188 Mont. 432, 438, 614 P.2d 489, 493 (1980) (quoting Culombe v. Connecticut, 367 U.S. 568, 602, 81 S. Ct. 1860, 1879 (1961)). However, a person charged with a crime has a right under the due process clause of the Fourteenth Amendment coupled with the Fifth Amendment right against self-incrimination to not be convicted based upon an involuntary confession. Dickerson v. U.S., 530 U.S. 428, 434-35, 120 S. Ct. 2326, 2330 (2000); State v. Morrisey, 2009 MT 201, ¶ 29, 351 Mont. 144, 214 P.3d 708. An involuntary confession is not admissible against the defendant, and if the defendant moves to suppress a confession, the burden shifts to the State to “prove by a preponderance of the evidence that the confession or admission was voluntary.” Section 46-13-301(2), MCA; Davison, 188 Mont. at 438, 614 P.2d at 493.
¶15 For over 125 years this Court has recognized that an involuntary confession may not be used in a criminal prosecution. In Territory of Montana v. Underwood, 8 Mont. 131, 19 P. 398 (1888), this Court held that “[i]t is elementary law that before a confession can be received in evidence in a criminal case it must appear that it was voluntary ....” The confession in that case was suppressed because it was induced by promises of more lenient treatment. Underwood, 8 Mont. at 134, 19 P. at 400. Use of an involuntary confession “vitiates a criminal conviction” because it violates the defendant’s constitutional rights to due process and to be free from self-incrimination. Allies, 186 Mont. at 110, 606 P.2d at 1049. An involuntary confession may not be used, even if it is truthful. Allies, 186 Mont. at 110, 606 P.2d at 1049.
¶16 Determining whether a confession is voluntary is a factual issue that depends upon a consideration of the totality of the circumstances. State v. Hermes, 273 Mont. 446, 448, 904 P.2d 587, 588 (1995).
When determining the voluntariness of a confession, the district court must take into account the totality of the circumstances, including the interrogation techniques used by police; the defendant’s age and level of education; the defendant’s prior experience with the criminal justice system; the defendant’s *329 demeanor, coherence, articulation, and capacity to make use of his or her faculties; and whether the defendant was advised of his or her Miranda rights. A confession induced by any threat of violence, improper influence, or by any direct or implied promise, however slight, may be involuntary.
Old-Horn, ¶ 17 (internal citations omitted).
¶17 This Court has considered numerous factors in individual cases that can bear upon whether a confession is voluntary, and no single factor controls. State v. Grey, 274 Mont. 206, 210, 907 P.2d 951, 954 (1995). Relevant factors have included the defendant’s age, education, background and experience with law enforcement. State v. Craig, 262 Mont. 240, 242, 864 P.2d 1240, 1242 (1993). The use of psychological pressure on the defendant in a coercive setting, including coercive questioning that minimizes the defendant’s ability to deny wrongdoing, along with failure to deliver adequate Miranda warnings are relevant considerations, Hermes, 273 Mont. at 448, 904 P.2d at 588. Advising a suspect of her Miranda rights, even if done properly, “is not a license to coerce a confession.” Allies, 186 Mont. at 115, 606 P.2d at 1051.
¶18 Other relevant factors in evaluating the voluntariness of a confession are the use of psychological coercion; isolating the suspect in a small room; using a mean cop-nice cop interrogation technique; interrogation under the assumption of guilt; and lying to the suspect about what is known of her involvement in the crime. Allies, 186 Mont. at 112-14, 606 P.2d at 1050-51. A confession may not be induced by threats or violence, promises, or lies and deception by the interrogator. Grey, 274 Mont. at 211, 907 P.2d at 954. Lying to the suspect about what law enforcement knows about her involvement in the crime is “particularly repulsive to and totally incompatible with the concept of due process.” Allies, 186 Mont. at 113, 606 P.2d at 1051. We recently emphasized that “[w]e will not condone the use of deception to obtain a confession.” Old-Horn, ¶ 25.
¶19 An involuntary confession cannot be used against a defendant at trial. Davison, 188 Mont. at 437, 614 P.2d at 492. Use of an involuntary confession to obtain a conviction is trial error, and even if there was other evidence to support the result the State must demonstrate that there is no reasonable possibility that the confession contributed to the conviction. State v. Spang, 2002 MT 120, ¶ 32, 310 Mont. 52, 48 P.3d 727 (conviction reversed, remanded for a new trial without the use of statements made during an involuntary confession).
¶20 Based upon the evidence at the suppression hearing, the District Court found that Eskew was age twenty-one, a single mother with a six-month-old daughter and that she still lived with her parents. She *330 was intelligent and articulate; ahigh school graduate; and an employee at JCPenney. She had obtained a two-year associate degree in education from MSU Great Falls.
¶21 The District Court found that before the interrogation began at the police station, an officer told Eskew that as soon as the interrogation finished she could return to the hospital and her daughter. As noted above, the District Court subsequently found that this was a misrepresentation of the true situation. For the next twenty minutes, Eskew was alone in the small windowless interview room where she “cried and sobbed” asking for her child. The District Court found that at the beginning of the interrogation an officer verbally advised Eskew of her Miranda rights and asked if she wanted to talk. Eskew assented verbally and physically, after which the officer gave her a written Miranda warning form that she “carefully and deliberately read” and “voluntarily signed.” Eskew continued to sob for the next hour or more, but gradually became more composed.
¶22 The District Court found that while the tone of the officers began as “soft spoken and passive,” it was later “aggressively confrontational and emphatic in challenging [Eskew’s] veracity and in challenging the consistency of her statements.” The District Court found that the officers did not physically threaten Eskew, and that they did not “yell” at her but occasionally “emphatically raised their voices.” The District Court found:
Throughout the first one-third of the interview, one or both of the Detectives expressly or implicitly misrepresented to Ms. Eskew that the purpose of the interview, essentially, was to find out what happened in order to facilitate medical care for the child. In reality, the sole purpose of the interview, at that juncture, under the circumstances, was to facilitate a criminal investigation of the child’s injuries with Ms. Eskew as the focus of that investigation on the information available to the officers at that time.
The District Court found that except for the officers’ express misrepresentation that they intended to get Eskew back to her daughter and their “numerous” misrepresentations that the focus of the interrogation was to “facilitate medical care for the child,” the interviewing techniques used were “not unduly or unfairly coercive, deceptive or manipulative under the totality of the circumstances.” The District Court concluded that there was “no indication” that Eskew was not “tracking” or that she was being overwhelmed, coerced, or manipulated in the interrogation.
¶23 Based upon the totality of the circumstances, including the *331 District Court’s findings about the officers’ lies to Eskew, we determine that the District Court erred by concluding that the interrogation was not unduly coercive or manipulative and by concluding that Eskew was “fully cognizant of her situation.” Those conclusions are contradicted by the District Court’s express finding that the officers deliberately lied to Eskew about the purpose of the interrogation (that it was to get vital information to allow doctors to treat her gravely injured daughter). Eskew could not have possibly been “fully cognizant” of her situation because the officers conducting the interrogation lied to her about material elements of her situation.
¶24 Upon review of the recording, there is every indication that Eskew underwent the interrogation believing that she was providing information to assist the doctors in treating her daughter and believing that as soon as she provided the information that the officers wanted she would be returned to the hospital. This fundamental misunderstanding of what was happening was based upon lies that precluded Eskew from understanding the situation and the significance of her answers. Further, Eskew’s demonstrations of rocking and then shaking her baby, and descriptions of her interactions with her, were manipulated and orchestrated by the officers to get the result that they wanted.
¶25 Under the totality of the circumstances it is clear to this Court that Eskew’s responses to the interrogating officers were not voluntary. We accept the District Court’s findings about the interrogating officers’ credibility, conduct and intent that were based upon the officers’ own testimony. State v. Gittens, 2008 MT 55, ¶ 27, 341 Mont. 450, 178 P.3d 91 (this Court will defer to a district court’s determination of the credibility of witnesses). The District Court heard the officers’ live testimony describing the event and determined that they purposely lied in order to manipulate and misrepresent the situation to Eskew.
¶26 However, we disagree with the District Court’s conclusion from these facts that the interview, looking at the totality of the circumstances, was not unduly deceptive or manipulative. The officers told her lies, not about peripheral points, but about the fundamental nature of the proceeding; about her part in it; and about her part in her daughter’s fight for life. Her responses were manipulated by the misrepresentations of the officers about the nature of the interrogation and the importance of her responses. Her responses at important junctures—such as whether she shook her daughter—were coerced by the officers’ insistence that she provide responses that they wanted because the responses were vital to the proper medical care of her daughter. This purposeful manipulation broke down Eskew’s ability to *332 resist the officers’ relentless pressure to tell them what they wanted to hear—that she shook her daughter.
¶27 In summary, based upon the District Court’s findings of fact, the officers deliberately misrepresented the situation to Eskew, a young mother with a dying daughter. They imposed extreme psychological pressure on her to agree with their descriptions of what had happened. They told her that her refusal to admit to injuring her daughter was impeding medical treatment. They lied to her that she would be reunited with her daughter if she gave them the answers that they sought—that she shook Brooklynn and caused her injuries. When she relented and gave them what they wanted she was not reunited with her daughter, but was arrested. We conclude that upon consideration of the circumstances and the record, the State has not met its burden to show by a preponderance of the evidence that Eskew’s admissions were voluntary.
¶28 Based upon our review of the record, we are firmly convinced that a mistake has been made. The District Court misapprehended the effect of the evidence and failed to apply prior established law concerning the effect of lies and psychological coercion on the issue of voluntariness of a confession. Old-Horn, ¶ 13. The District Court misapprehended the effect of its own findings of fact in the context of the clear law on involuntary confessions. An admissible confession cannot be the product of psychological coercion. Hermes, 273 Mont. at 448, 904 P.2d at 588. This Court has repeatedly held that law enforcement officers may not use lies to obtain confessions or admissions for a criminal proceeding. Grey, 274 Mont. at 211, 907 P.2d at 954; Allies, 186 Mont. at 113, 606 P.2d at 1051 (lying to a suspect to obtain a confession is “particularly repulsive to and totally incompatible with the concept of due process”); Old-Horn, ¶ 25 (“We will not condone the use of deception to obtain a confession.”). Confessions or admissions like the ones in this case, induced by deliberate psychological coercion, lies, and material misrepresentations to the suspect are not voluntary and should be excluded from evidence. Moreover, as the District Court recognized at sentencing, the use of the interrogation against Eskew was the foremost piece of evidence that led to her conviction.
¶29 We decide this appeal based upon the issue of whether Eskew’s confession or admission was voluntary. Therefore, we conclude that it is not necessary to address her issue regarding the sufficiency of the Miranda warning or her issue regarding the defense expert.
*333 CONCLUSION
¶30 We conclude that the District Court erred in denying the motion to suppress and in allowing the State to use the results of the interrogation against Eskew at trial. We reverse the conviction and remand for further proceedings consistent with this Opinion.
JUSTICES SHEA, WHEAT, BAKER and RICE concur.

 These facts are taken from the transcript of the police interrogation of Eskew.