FILED

01/31/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0082

DA 21-0082

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 19N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

DANIEL HUNTER FLANSBURG,

Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC-17-390
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Jeavon C. Lang, Assistant Appellate
Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

Scott D. Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:  January 11, 2023

Decided:  January 31, 2023

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Daniel Flansburg (Flansburg) appeals from the January 22, 2019 Order Re Motion to Suppress of the Thirteenth Judicial District Court, Yellowstone County, denying Flansburg's Motion to Suppress. We affirm.

¶3 On April 12, 2017, Flansburg was charged with one count of Sexual Intercourse Without Consent, a felony, or, in the alternative, Sexual Assault, a felony. Thereafter, the State amended its charges two additional times, ultimately charging Flansburg with two felony counts of Sexual Assault. On September 26, 2018, Flansburg filed a Motion to Suppress asserting his confession was involuntary as law enforcement "failed to obtain a valid Miranda rights waiver and used coercive interrogation techniques." Following hearing on January 6, 2019, the District Court issued its order on January 22, 2019 denying Flansburg's Motion to Suppress finding that, under a totality of the circumstances, Flansburg understood his rights; made a voluntary, uncoerced choice to waive his rights; and the interrogation techniques were not psychologically coercive such that Flansburg's confession was voluntarily given. Thereafter, Flansburg entered into an Acknowledgment of Waiver of Rights and Plea Agreement in which he agreed to plead guilty to Count I—Sexual Assault, the State agreed to dismiss Count II—Sexual Assault, and Flansburg

reserved his right to appeal the court's suppression ruling. Pursuant to the plea agreement, on August 22, 2019, Flansburg plead guilty to one count of felony sexual assault, the State dismissed the other count of felony sexual assault, and the District Court sentenced Flansburg to 20 years at the Montana State Prison, with 12 of those years suspended. Additional facts will be discussed below as necessary.

¶4     We review a district court's decision on a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether the court's application of the law is correct. *State v. Eskew*, 2017 MT 36, ¶ 12, 386 Mont. 324, 390 P.3d 129.

> The question of whether a defendant has given a confession voluntarily is a factual determination within the province of the district court. The district court has the opportunity to observe the demeanor of witnesses and is in the best position to determine their credibility. We will not, on appeal, reweigh the evidence or substitute our evaluation of the evidence for that of the district court.

*State v. Old-Horn*, 2014 MT 161, ¶ 14, 375 Mont. 310, 328 P.3d 638 (citations omitted).

¶5     "Whether or not a defendant's privilege against self-incrimination is triggered is a conclusion of law. Our standard of review of a district court's conclusions of law is plenary. We determine whether the district court's conclusions are correct." *State v. Hill*, 2009 MT 134, ¶ 21, 350 Mont. 296, 207 P.3d 307; *State v. Fuller*, 276 Mont. 155, 915 P.2d 809.

¶6     Flansburg asserts Detective Wichman "downplayed" the *Miranda*[1] warning he read to Flansburg before proceeding with the custodial interrogation interview and, although Flansburg signed the *Miranda* warning, he did not read it or understand its importance.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Flansburg asserts the *Miranda* warning was inadequate such that the State cannot meet its burden to show Flansburg voluntarily waived his *Miranda* rights. Conversely, the State asserts Detective Wichman advised Flansburg of the four *Miranda* tenets and confirmed orally and in writing that Flansburg understood his *Miranda* rights and, having these rights in mind, still desired to talk with Detectives Wachman and Baum. Further, Flansburg willingly signed the *Miranda* waiver of rights document and initialed the document twice confirming he understood his rights and that he still agreed to talk with the detectives. The State asserts the advisement of his *Miranda* rights together with Flansburg's immediate actions thereafter support the District Court's finding that Flansburg's waiver was voluntary.

> The law regarding confessions in criminal proceedings is well established in Montana. Voluntary confessions are generally admissible in criminal prosecutions, and they are recognized as an important tool for law enforcement. *State v. Allies*, 186 Mont. 99, 109, 606 P.2d 1043, 1048 (1979). A voluntary confession is the result of a free choice by the suspect, and "if he has willed to confess, it may be used against him." *State v. Davison*, 188 Mont. 432, 438, 614 P.2d 489, 493 (1980) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S. Ct. 1860, 1879, 6 L. Ed. 2d 1037 (1961)). However, a person charged with a crime has a right under the due process clause of the Fourteenth Amendment coupled with the Fifth Amendment right against self-incrimination to not be convicted based upon an involuntary confession. *Dickerson v. U.S.*, 530 U.S. 428, 434-35, 120 S. Ct. 2326, 2330, 147 L. Ed. 2d 405 (2000); *State v. Morrisey*, 2009 MT 201, ¶ 29, 351 Mont. 144, 214 P.3d 708. An involuntary confession is not admissible against the defendant, and if the defendant moves to suppress a confession, the burden shifts to the State to "prove by a preponderance of the evidence that the confession or admission was voluntary." Section 46-13-301(2), MCA; *Davison*, 188 Mont. at 438, 614 P.2d at 493.

*Eskew*, ¶ 14.

¶7     Determining whether a confession is voluntary is a factual issue which requires consideration of the totality of the circumstances—including, but not necessarily limited to, whether defendant was advised of his *Miranda* rights; the interrogation techniques used; the age and education of the defendant; the defendant's demeanor, articulation, and capacities; and the presence of any threat of violence, improper influence, or promise to induce the confession. *Eskew*, ¶¶ 16-18.

¶8     In denying Flansburg's Motion to Dismiss, the District Court found he was twenty-four years old, had some minor experience with the criminal justice system, and there were no obvious concerns about his level of education and understanding.  Flansburg does not contest these findings, but rather asserts Detective Wichman treated the recitation of the *Miranda* warning as a "mere formality" which did not make clear to Flansburg the seriousness of the situation, rendering the warning inadequate.  Upon our review of the record, we disagree with Flansburg's characterization of the *Miranda* warning given him by Detective Wichman as being inadequate.  Here, prior to any substantive questioning of Flansburg, Detective Wichman read verbatim to Flansburg a standard *Miranda* warning advising him of *Miranda's* four prescribed warnings—Flansburg had the right to remain silent, that anything he said could be used against him in court, that he had a right to have an attorney present, and if he could not afford an attorney, one would be appointed to him prior to any questioning if he so desired.  *Miranda*, 384 U.S. at 479.  Detective Wichman then followed up with Flansburg to confirm he understood his rights and was still willing to speak to him and Detective Baum.  Flansburg did not indicate any misunderstanding as to his rights, did not indicate he had any difficulty with reading or comprehending the

English language, presented in a manner indicating he comprehended the warning and the interview situation, did not ask for clarification of anything, did not request an attorney, and initialed the *Miranda* waiver in several locations and signed it. From our review of the record, the factual findings of the District Court were supported by substantial evidence. Although Detective Wichman advised Flansburg that reading his rights to him was for both of their "safeties" and Flansburg did not himself read the *Miranda* warning document, such does not negate the fact that Detective Wichman did read the *Miranda* warning in its entirety to Flansburg and then confirmed with Flansburg he understood his rights and that he was still willing to talk with the officers. Flansburg does not assert he has educational or cognitive deficits that precluded him from understanding the *Miranda* warning read to him and he does not assert he was forced to initial and sign the document. The manner in which Detective Wichman advised Flansburg of his *Miranda* rights was reasonable, not atypical, and certainly not a "hollow and meaningless exercise" as characterized by Flansburg. Considering the totality of the circumstances, substantial evidence supports the District Court's factual findings that Flansburg was adequately advised and understood his *Miranda* rights and the District Court correctly applied the law in concluding Flansburg voluntarily waived those rights.

¶9 Flansburg also asserts that because of the interrogation circumstances—the use of subtle psychological coercion and the cold temperature of the interview room—his confession was not voluntary. In considering the interrogation circumstances, the District Court found the interview took place at the jail in the DUI interview room, the room was cold, but not intentionally kept cold. Flansburg was nervous, but not excessively so. He

was not handcuffed. The detectives addressed Flansburg in a conversational, non-aggressive manner, did not express anything untrue to Flansburg, made no statements to Flansburg as to the evidence they did or did not have, made no promises about what might occur if he confessed, and made no statements to Flansburg that he was guilty. The interview was not unduly prolonged, lasting only a little over an hour, with Flansburg confessing forty-four minutes into the interview.

¶10 Flansburg contends the detectives used subtle psychological coercion including assumption of guilt leading Flansburg to believe an admission of wrongdoing would lead to counseling as opposed to felony conviction and punishment. From our review of the record, considering the totality of the circumstances, substantial evidence supports the District Court's factual findings that the interrogation techniques were not psychologically coercive and the District Court correctly applied the law in concluding Flansburg's confession was made voluntarily. Although it was cold in the interview room, Flansburg was not subjected to prolonged cold exposure. The entire interview was relatively short, lasting about an hour. Although empathetic to Flansburg's history of abuse, the detectives did not make any promises to Flansburg as to what would occur upon a confession and any belief on Flansburg's part of an implied promise of treatment is not supported by the record. The detectives did question Flansburg regarding inconsistencies and matters they did not believe added up between his account and what was reported from others. This Court has not held that questioning a suspect, who has been fully advised of his *Miranda* rights and has agreed to talk with law enforcement, with legitimate evidentiary issues constitutes

impermissible psychological coercion and we decline to do so under the circumstances of this case.

¶11    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶12    Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR